BINGHAM and another, Respondents, vs. THE INSURANCE COM-
PANY OF NORTH AMERICA, Appellant.

*September 25 — October 15, 1889.*

*Insurance against fire: Cancellation of policy.*

An insurance policy provided that it might be canceled at any time
    by the company on refunding or tendering to the assured a ratable
    proportion of the premium for the time unexpired. The assured,
    being requested so to do, surrendered the policy, and either then or
    shortly afterwards was informed as to the amount of the unearned
    premium and made no objection to a request that the time for
    payment thereof be postponed. *Held,* that there was a valid can-
    cellation of the policy.

APPEAL from the Circuit Court for *Winnebago* County.
The following statement of the case was prepared by
Mr. Justice CASSODAY:

This action is to recover damages for loss under a policy
of insurance issued by the defendant to the firm composed
of the plaintiffs, upon the buildings and personal property
therein described, in the aggregate sum of $2,500, for the
period of one year, commencing March 17, 1887, and end-
ing March 17, 1888. The property was destroyed by fire
September 17, 1887. The policy contained the following
clause: "The policy may also be at any time canceled by
the company, on refunding or tendering to the assured, his,
her, or their agent or representative, a ratable proportion
of the premium for the time unexpired." The answer was
to the effect that the policy was surrendered, given up,
and canceled on or about August 16, 1887, and before the
fire.

At the close of the trial the jury returned a special ver-
dict, in which ten questions were answered, to the effect
that the plaintiffs were the owners of the property insured
when insured and at the time of the loss; that the defend-

ant's local agent notified the plaintiffs that the defendant proposed to cancel the policy, and requested them to return it to him, and thereupon the plaintiff *Perrin* agreed to return the policy; that, in pursuance of such request, the plaintiffs did return the policy to the local agent on or about August 16, 1887; that the defendant's local agent did not, at any time before the fire and after the return of the policy, inform the plaintiff *Perrin* of the amount of unearned premium, nor did said agent ask for credit for such unearned premium, and *Perrin* did not agree to give him credit therefor; that the amount of the plaintiff's loss on buildings insured was $4,000; that the plaintiffs' loss on personal property insured was $40,000; that the defendant never paid or tendered payment of the unearned premium; that the plaintiffs were entitled to recover $2,670.54 as damages, if anything. Thereupon the plaintiffs moved the court for judgment upon the special verdict so returned, and the same was granted. From the judgment entered thereon in favor of the plaintiffs the defendant appeals.

*Charles Barber*, for the appellant.

*Gabe Bouck*, for the respondents.

Cassoday, J. Under the clause of the policy contained in the foregoing statement, the defendant was at liberty at any time before the loss to cancel the policy, on refunding or tendering to the plaintiffs or their agent or representative a ratable proportion of the premium for the time unexpired. It is conceded, in effect, that the property insured was located at Ironwood, Mich., where the plaintiffs resided; that the plaintiffs procured the policy through the defendant's agent Dickinson, located at New London, Wis., some 200 miles distant from Ironwood; that the plaintiff *Perrin* had formerly been the defendant's local agent at New London, and was succeeded by Dickinson, who still owed him several hundred dollars on his purchase of the

business; that about August 1, 1887, the said local agent informed the plaintiff *Perrin*, at New London, that the defendant's special agent had ordered him to cancel the policy, and requested him *(Perrin)* to bring the policy down to New London for that purpose, which *Perrin* then and there agreed to do; that August 16, 1887, *Perrin* brought the policy down to New London, and gave it to the agent through his office window or door. Eight of the ten several questions constituting the special verdict were answered by the consent and agreement of counsel, and hence were not submitted to the jury. The only questions submitted to the jury were the following: "(3) Did Dickinson, at any time before the fire and after the return of the policy, inform *Perrin* of the amount of unearned premium?" "(5) Did Dickinson ask for credit for such unearned premium, and did *Perrin* agree to give him credit therefor?" Under the charge of the court each of these questions was answered by the jury in the negative.

It appears from the undisputed testimony of Dickinson that at the time the policy was returned to him he, in effect, marked it canceled, and sent it to the defendant's general agent at Erie, Pa., and also entered in the books of the company at New London a statement to the effect that the policy was canceled, with the several amounts of the premium paid, and the earned premium and the unearned premium. Dickinson also testified, in effect, that at the time he requested *Perrin* to bring the policy to New London the latter replied that he was going up to Ironwood, where the policy was, and that he would then get it and bring it down, and that that would give him time to look up some more insurance; that when *Perrin* returned to him the policy he told *Perrin* that he had no funds then on hand to pay him the return premium; that, if it would not make any difference with him, he would like to have him wait for such payment until the next month; that he wanted to pay all

he could on the note *Perrin* then held against him; that *Perrin* replied, "All right," and inquired the amount of the return premium, which he then gave him, and he made a memorandum of it; that a short time afterwards he met *Perrin* in the street about meal-time, and told him it would be necessary for him to sign a cancellation receipt; that *Perrin* thereupon directed him to sign the plaintiffs' name to the receipt for him, which he did; that he never paid to the plaintiffs the return premium, and never offered to pay it until after the fire, when he told *Perrin* he would pay him the amount, which he refused to take. This testimony of Dickinson was mostly disputed by *Perrin*, who was the only witness on the part of the plaintiffs. But, in addition to the conceded and undisputed facts already mentioned, *Perrin* in effect admitted that two or three days after he left the policy with Dickinson he met the latter on the street, and told him "about the return premium, and spoke about paying it at some future time; that Dickinson then spoke about having a note to pay to him *(Perrin)*, and about the amount of the return premium, and his paying it at a future time, but did not say when, nor appoint any particular time; that he did say, however, that "he would pay it sometime in the future." From these admissions and the testimony of Dickinson it was conclusively established on the trial that before the fire and after the return of the policy the latter informed *Perrin* of the amount of the unearned premium. The answer of the jury to the contrary, therefore, is against the evidence.

· The court charged the jury, among other things, in effect, that the fifth question, quoted above, was the vital question in the case. That it was composed of two parts: *First*, did Dickinson ask for credit? and, *secondly*, did *Perrin* agree to give it? That upon those questions there was more or less conflict between *Perrin* and Dickinson, the only two witnesses in the case, which it was their duty to recon-

cile if they could, and, if not, determine on which side the truth lies. That "the policy was not canceled until the unearned premium was actually received or tendered to the plaintiff, or its payment was waived by the plaintiff." That "to constitute an agreement the minds of both parties must meet. That means, gentlemen, that one cannot make an agreement alone; that both must understand the agreement alike, and must assent to that agreement; or, to use the term the law uses in such a case, the minds of the parties must meet upon the subject of the agreement." That "to answer the fifth question 'Yes,' you must find that Dickinson asked *Perrin* to give him credit therefor, and that *Perrin* gave Dickinson credit therefor, to wit, for such unearned premium, to which I add the following: No particular form of words is necessary to establish such an agreement or understanding, but you must find from the evidence that Dickinson made substantially that proposition, and that *Perrin* assented to it."

Under these instructions and the conceded facts it is manifest that the jury must have answered the fifth question in the negative, upon the theory either that the policy continued in force unless the unearned premium was actually received by or tendered to the plaintiffs, or such payment expressly waived by them; or else that Dickinson did not expressly ask for an extension of the time for the payment of the return premium, and that *Perrin* did not expressly grant such extension. The undisputed facts are to the effect that the special agent of the company had ordered Dickinson to cancel the policy; that some two weeks prior to its return *Perrin* was informed of such direction, and requested to return it for that purpose, and agreed to do so; that in pursuance of such request and agreement he did return it for such cancellation; that, knowing he was entitled to the return premium as a condition precedent to such cancellation, he delivered the policy to Dick-

inson, without exacting any condition whatever; that either then or two or three days afterwards Dickinson informed *Perrin* of the amount of such return premium, and the fact that he had a note to pay to *Perrin*, and asked that the time of the payment of such return premium be extended to some future time, and that *Perrin* made no objection whatever to any of such requests. Upon this conceded state of facts, is it possible to hold that there was no cancellation of the policy? The defendant had the absolute right, under the contract, to cancel the policy at any time on refunding or tendering the return premium. That done upon proper notice, and the cancellation would be complete without any surrender of the policy. The surrender of the policy, therefore, was the voluntary act of the plaintiffs. They had the absolute right to exact the payment of such return premium as a condition precedent to such surrender. They did not make any such exaction, but voluntarily surrendered the policy without any condition, upon its being demanded for the very purpose of cancellation. They at least acquiesced in a request of the local agent for a postponement of the time for the payment of such return premium after being informed of the amount, without any objection or hesitation.

This is a simple contract of insurance. The facts in relation to such cancellation transpired long prior to the loss. The contract was still executory. It has always been competent for the parties to such a contract to subsequently modify, waive, dissolve, or annul the same by parol. *Brown v. Everhard*, 52 Wis. 207; *McNish v. Reynolds*, 95 Pa. St. 486. In *Hillock v. Traders' Ins. Co.* 54 Mich. 531, the facts and the clause of the policy involved were quite similar to the case at bar; and in the opinion of the court by COOLEY, C. J., it was held that "a partner's consent to the cancellation of an insurance policy in which the firm is interested is conclusive on the firm, and a formal surrender of the

policy is unimportant, except as evidence of the cancellation. Transactions with reference to the cancellation of an insurance policy are to be construed reasonably and fairly, and in accordance with the evident understanding of the parties at the time. The actual tender of unearned premium is unnecessary to the cancellation of an insurance policy if the minds of the parties have met on the point that the policy is to be canceled." To the same effect are *Stone v. Franklin F. Ins. Co.* 105 N. Y. 543; *Kirby v. Phœnix Ins. Co.* 13 Lea, 340. Such we regard as a correct statement of the law applicable to this case. A similar rule has been applied by this court to a supposed cancellation by the assured. *Walters v. St. Joseph F. & M. Ins. Co.* 39 Wis. 489. Portions of the charge and the questions submitted to the jury in the case at bar are not wholly in harmony with the rules of law thus stated. The undisputed and conceded facts in the record are such as not to warrant a judgment in favor of the plaintiffs. A new trial may disclose a different state of facts. Of course the company is liable to the plaintiffs for the return premium.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.