WOOD, Respondent, vs. TRELEVEN, Executor, etc., Appellant.

*September 28 — October 15, 1889.*

*Arbitration and award: Matters submitted: Presumption: Contingent
claim: Executors.*

1. The presumption is that arbitrators considered every matter sub-
mitted to them, and made their award with respect thereto.
2. Upon the evidence in this case, it is *held* that an arbitration **and**
award between an executor and the persons interested in the estate

of his testator determined the extent of the executor's liability arising from the settlement of the estate; and that an award of damages, in favor of the executor and against the United States, for the overflow of land,— an appeal from which was then pending,— was considered by the arbitrators and embraced in such determination.

APPEAL from the Circuit Court for *Fond du Lac* County.

On October 8, 1887, the defendant rendered to the county court of Fond du Lac county his account as surviving executor of the last will and testament of Thomas J. Wood, deceased. The plaintiff, a daughter of said T. J. Wood, filed objections thereto.

It appears that in 1875 the executors of said will filed a claim against the United States for damages for the overflow of lands belonging to the estate of said T. J. Wood; that in December, 1875, the commissioners made an award in their favor of $1,466.49; that the United States appealed from such award; and that judgment on such appeal in favor of the executors for the amount of the award was rendered on December 1, 1886. The defendant testified that the net amount which, as surviving executor, he received from such judgment was $1,291.66, which was paid to him in April, 1888.

It further appears that in March, 1880, the parties (and also Mrs. Wood, since deceased, the widow of T. J. Wood) submitted to arbitrators " all manner of actions, cause and causes of actions, suits, controversies, claims, and demands whatsoever, which may by law be submitted," then " pending, existing, or held by or between " them. The award of the arbitrators, made April 17, 1880, states that their decision " shall cover and determine all the matters and controversies in dispute between the parties as having arisen from the settlement of the estate " of the said T. J. Wood.

The defendant claims that the award of damages for

overflow of land, above mentioned, was set off to him by the award of the arbitrators, and that he is not liable to account to the estate for the amount received by him on the judgment. The plaintiff seeks to charge him with that amount. The circuit court held, on appeal, that the defendant should pay to the estate the said sum of $1,291.66, with interest since April, 1888, and rendered judgment accordingly. The defendant appeals.

For the appellant there was a brief by *Edward W. Phelps*, attorney, and *Elihu Colman*, of counsel, and oral argument by *Mr. Phelps*.

*Kate Pier*, for the respondent.

COLE, C. J. The real question in this case is, Was the claim against the United States for damages by reason of the flowage of land submitted to and passed upon by the arbitrators?

The submission was of all actions, cause and causes of actions, suits, controversies, claims, and demands whatsoever pending and existing between the parties. The submission is surely broad enough in its terms to include every controversy or demand existing between the representative of the estate of Thomas J. Wood, and the widow and heir of that estate. The submission recites that controversies existed between these parties in relation to divers subjects, as we understand, growing out of the settlement of that estate; that is, as we suppose, there was a dispute as to the indebtedness, or the extent of the indebtedness, of the executor. The parties agreed to submit the matters in dispute to the decision of arbitrators. No mention is made of any particular controversy, claim, or demand, but all controversies and demands of every nature were submitted. The presumption is that the arbitrators considered every matter submitted, and made an award in respect to it. They made a general award, determining all matters and controversies

in dispute arising from the settlement of the estate. The executor was to pay the fees of the arbitrators, and also pay a specified sum of money to Mrs. Wood and the daughter. He was also to convey to Mrs. Wood the two lots named; or, if she elected, to pay her $300 instead of conveying the lots.

Now, upon these facts, the presumption is irresistible that the award included everything, and determined the liability of the executor, or the extent of his liability arising from the settlement of the estate. This is the necessary presumption or inference to be drawn from the submission and award. The rule is that every reasonable presumption will be made for the purpose of upholding the validity of an award, so as to give effect to it and accomplish the ends of justice. Morse, Arb. 411; Russ. Awards, 264, 688; *Bancroft v. Grover*, 23 Wis. 463; *Call v. Ballard*, 65 Wis. 187.

This presumption, arising from the face of the award itself, that the claim for damages was submitted, is strengthened by the parol evidence given relating to that point, and the probabilities of the case. The executor himself swears that the claim was submitted to the arbitrators. The arbitrator Bartlett says that the claim was considered by the arbitrators in making their decision. The other surviving arbitrator, Simmons, has no recollection whether it was considered or not. *Miss Wood* thinks the claim was not submitted, but she was present at only one session of the arbitrators, at the house of her mother. It seems very improbable that this claim was not submitted. An award of damages had been made in favor of the estate to the amount of $1,466. The United States had taken an appeal to the circuit court from this award, and the cause was pending in that court when the submission was made to the arbitrators. The same attorney who prosecuted the claim for damages was the attorney of *Miss Wood* before the arbitration. It is incredible that this large claim in favor of the

estate should have been overlooked or not considered in an inquiry to determine the liability of the executor growing out of his administration of the estate. It constituted the most important item in amount of the assets, and it is improbable that it was not considered. True, no mention is made of it, either in the submission or award; but we cannot presume from that fact that it was not considered. The executor testified that every species of property, of whatsoever name and nature, was handed in on both sides by the parties to the arbitration; and the presumption is that all these matters were considered by the arbitrators. The arbitrator Simmons, while he has no recollection of this claim against the United States being considered, yet, in effect, says the executor was to take the toll-gate property, subject to the mortgage upon it, in part settlement. This was the land, a part of which had been overflowed. Therefore, considering the whole case, the evidence is conclusive that the claim for flowage was submitted and passed upon by the arbitrators, and all the circumstances support that conclusion.

It is suggested that secs. 3544, 3545, R. S., would not permit the arbitrators to consider this claim. It is not obvious what bearing these provisions have upon the question. There is no proof that any one of the heirs was an infant, nor was there anything in the nature of this claim which would prevent it from being a subject for arbitration. True, it was in a sense a contingent claim, subject to further litigation; but still it might well be a matter in dispute between the parties as to who was really entitled to the money which might eventually be realized on that claim. There was evidently a dispute as to the indebtedness, or the extent of the indebtedness, of the executor, growing out of his administration of the estate of Wood; and it is apparent the award was intended to, and did in fact, include all matters which had a bearing on that issue.

The executor should be allowed the amount which he received from the government of the United States for the flowage as justly belonging to him, and his account should be settled on that basis.

*By the Court.*— The judgment of the circuit court is therefore reversed, and the cause is remanded to that court with directions to remand the same to the county court for further proceedings according to law.