MONTGOMERY, Executor, Appellant, vs. AMERICAN CENTRAL INSURANCE COMPANY, Respondent.

*October 16 — November 16, 1900.*

*Insurance against fire: Michigan standard policy: Independent agreement for appraisal of loss: Effect of award: Estoppel by construction: Public policy: Married women: Statutory and common-law awards: Consideration: Offer of judgment: Costs.*

1. After a loss under a Michigan standard fire policy providing that in case of disagreement the amount of loss should be submitted to appraisers whose award should be *prima facie* evidence of such amount, the parties signed a written agreement for submission to appraisers, providing that their award should be *binding and conclusive*. In an action on the policy the evidence is *held* not to sustain plaintiff's contention that said agreement was procured by defendant's representation that it was such an agreement as was provided for in the policy and that both parties so construed and acted upon it.

2. In the absence of fraud or mistake the insured is conclusively presumed to have known the contents of the appraisal agreement.

3. Such an appraisal agreement, though providing that the award should have an effect different from that provided for in the standard policy, is not void on the ground that it is contrary to the policy of the law (How. Ann. Stats. Mich. ch. 187) under which the standard policy was adopted, which prohibits the use of any other form of policy and provides that "every policy or contract made or issued contrary to the provisions of this act shall be void." Neither that statute nor the standard policy precludes the parties from contracting, after a loss, with reference to its settlement.

4. Such an appraisal agreement may be made by a married woman under the laws of Michigan, which authorize married women to acquire and hold property and to make contracts in relation thereto and to sue and be sued in relation thereto the same as if unmarried.

5. An award of the appraisers under such an agreement, though not a statutory award because not in accordance with the statutes relating to the subject, may nevertheless, if otherwise unobjectionable, be enforced as a common-law award.

6. Such an appraisal agreement need not be based upon any new consideration.

7. The provision of such an agreement that the award shall be binding and conclusive as to the amount of loss, since it does not go to the

whole groundwork of the controversy, does not render the agree-ment void as against public policy on the ground that it ousts the courts of jurisdiction.

8. Sec. 2789, Stats. 1898 (providing that where the plaintiff has not ac-cepted defendant's offer of judgment, if he "fail to obtain a more favorable judgment he cannot recover costs, but must pay defend-ant's costs from the time of the offer "), applies only to costs accru-ing after the time of the offer and does not preclude the plaintiff in such a case from recovering his costs up to that time, if he would otherwise be entitled thereto.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, JR., Circuit Judge. *Reversed.*

For the appellant there was a brief by *Wigman, Martin & Martin,* and oral argument by *P. H. Martin.* They con-tended, *inter alia,* that the appraisal agreement was repre-sented by the defendant to be, and construed and acted upon by the parties to it as, an award under and pursuant to the terms of the policy, hence having the effect in said policy provided, and that by estoppel of construction de-fendant is denied the right to claim for it any other effect. The defendant company may not, *by virtue* of the provision of the policy, *demand* an appraisal and award, and then, having secured an advantage in the adjustment, insist, *con-trary to the terms* of the policy, that it is "binding and con-clusive." *Chapman v. Rockford Ins. Co.* 89 Wis. 583; *Uhrig v. Williamsburgh C. F. Ins. Co.* 101 N. Y. 365; *Delaware & H. C. Co. v. Pa. C. Co.* 50 N. Y. 258; *Brock v. Dwelling House Ins. Co.* 102 Mich. 583; *Bradshaw v. Agricultural Ins. Co.* 137 N. Y. 137; *Kiernan v. Dutchess Co. M. Ins. Co.* 150 N. Y. 190. A party may be estopped as well by the *construction* placed upon a proposed contract as in any other particular. *Calkins v. State,* 13 Wis. 389; *Flint v. Babbitt,* 59 Vt. 190; *Hotchkiss v. Phœnix Ins. Co.* 76 Wis. 269; *John-ston v. N. W. L. S. Ins. Co.* 94 Wis. 117; *Mattoon v. Young,* 2 Hun, 559; *Continental L. Ins. Co. v. Chamberlain,* 132 U. S. 305; 2 May, Ins. §§ 498, 499, 502. An award independent

of the provision of the policy and having an effect contrary thereto, as claimed by the defendant, is void. Any contract or stipulation running counter to the provisions of the standard policy is void as against public policy. This is so whether the agreement or stipulation is found in the policy of insurance or is one made subsequent to a loss. *Thompson v. Citizens' Ins. Co.* 45 Wis. 388. In several of the states an award binding and conclusive has been held void as against public policy in that it ousts the court of jurisdiction. *Mentz v. Armenia F. Ins. Co.* 79 Pa. St. 478, 21 Am. Rep. 80; *German Am. Ins. Co. v. Etherton*, 25 Neb. 505; *Home F. Ins. Co. v. Bean*, 42 Neb. 537, 47 Am. St. Rep. 711; *Ins. Co. of N. A. v. Bachler*, 44 Neb. 549; *Continental Ins. Co. v. Wilson*, 45 Kan. 250, 23 Am. St. Rep. 720; *Baltimore, O. & C. R. Co. v. Scholes*, 14 Ind. App. 524, 56 Am. St. Rep. 307. It may well be that one of the objects of the legislature in providing for an award *prima facie* in its effect was to obviate this objection and provide means that will, if fairly carried out, usually end the controversy, while it preserves to the court jurisdiction of the issue, and to the parties the right to invoke the aid of that jurisdiction if dissatisfied. *Fidelity & C. Co. v. Eickhoff*, 63 Minn. 170, 30 L. R. A. 586; *Fidelity & C. Co. v. Crays*, 76 Minn. 450. Plaintiff, a married woman, lacked capacity to enter into the agreement for appraisal, independent of the policy, having a binding and conclusive effect. Her sole authority is found in sec. 6295, How. Ann. Stats. Mich. This power cannot be extended beyond the constitutional and statutory limits. *Kenton Ins. Co. v. McClellan*, 43 Mich. 565; *De Vries v. Conklin*, 22 Mich. 255. It is material to note that the statute of Michigan (How. Ann. Stats. sec. 8474) unlike Wisconsin (Stats. 1898, sec. 3544) *denies* to a married woman the right to enter into a statutory award. This is not a statutory award, and the bare question of the extent of loss could not, at common law, be made the subject matter of submission.

*Garr v. Gomez,* 9 Wend. 649; Morse, Arbitration, 40. A mere evidentiary abstract fact is not property within the statute relating to married women; it cannot be sold, assigned, conveyed, or devised, nor can a contract concerning it be held one pertaining to property.

For the respondent there was a brief by *Van Dyke & Van Dyke & Carter,* and oral argument by *W. D. Van Dyke.* To the point that an appraisal by agreement of the parties, made after the fire, abrogates or takes the place of the appraisal provided for by the policy, they cited Ostrander, Insurance, § 266; Joyce, Insurance, § 3250; *Broadway Ins. Co. v. Doying,* 55 N. J. Law, 569; *Davis v. Atlas A. Co.* 16 Wash. 232; *Chandos v. Am. F. Ins. Co.* 84 Wis. 184–198; *Canfield v. Watertown F. Ins. Co.* 55 Wis. 419, 426; *Harrison v. German Am. Ins. Co.* 67 Fed. Rep. 577; *Connecticut F. Ins. Co. v. Hamilton,* 59 Fed. Rep. 258; *Schouweiler v. Merchants' M. Ins. Asso.* 11 S. Dak. 401; *Adams v. New York B. F. Ins. Co.* 85 Iowa, 6.

CASSODAY, C. J. It appears from the record that at the times mentioned the plaintiff's testatrix, Mollie Montgomery, owned two buildings at Iron Mountain, Michigan,— one a frame building and the other a brick building. On January 11, 1898, she held two policies of insurance against loss by fire on the frame building, which she had procured within the year immediately preceding,— one of $500 in the Northern Assurance Company of London, and the other of $500 in this defendant, *American Central Insurance Company of St. Louis;* and each of such policies permitted concurrent insurance to the amount of $2,000. She also held at the time mentioned four policies of insurance against loss by fire on the brick building, which she had procured within the year immediately preceding,— one for $1,000 in the Providence & Washington Insurance Company of Rhode Island, another for $1,000 in the Hanover Fire Insurance

Montgomery vs. American Central Ins. Co.

Company of New York, another for $1,000 in the Scottish Union & National Insurance Company of Edinburgh, and another for $1,000 in the defendant, *American Central Insurance Company of St. Louis;* and each of such four policies permitted concurrent insurance to the amount of $5,000. On January 11, 1898, such buildings, and each of them, were burned by fire, if not destroyed.

The several policies, particularly the two issued by the defendant, *American Central Insurance Company,* contained this provision: "In the event of disagreement as to the amount of loss the same shall be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire. The appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall be *prima facie* evidence of the amount of such loss." On or about February 7, 1898, the defendant's adjuster served notice and demand in writing on the testatrix, the body of which is as follows:

" As a result of our disagreement as to the loss and damage to your brick and frame buildings, and which was caused by the fire of January 11, 1898, I hereby demand an appraisal under such policies for such companies as I represent as adjuster, and such as are particularly inserted in the inclosed blanks. I inclose you herewith blank appraisal agreements, with duplicates, for both buildings, duly signed by myself as such adjuster, and herewith request that you sign and insert the name of your appraiser, keeping the duplicates and returning the originals to Mr. R. T. Miller, who delivers this letter with said blanks to you. A prompt response will facilitate the early taking up of the adjustment.

"Very truly yours,    J. C. Ragsdale, Adjuster."

The blank appraisal agreements so inclosed, between the

testatrix and the defendant, bore the same date and were signed on behalf of the defendant and three others of such companies, and were signed by the plaintiff's testatrix and returned to the defendant March 5, 1898; and the agreement as to the brick building is as follows:

### "*Agreement for Submission to Appraisers.*

"It is hereby agreed by and between Mrs. Mollie Montgomery, party of the first part, and the *American Central Insurance Company of St. Louis*, and such other companies as shall sign and become parties to this agreement, party of the second part, that Robert Meyer and Thomas E. Pugh (and whenever either party demand it the two so chosen shall select a third person to act with them in case of disagreement) shall appraise the sound value of, and the loss and damage by fire of January 11, 1898, to, the property hereinafter named; and said persons so selected shall form a board of appraisers; and the award under oath of any two of such appraisers shall be *binding and conclusive* as to the sound value of, and loss and damage to, such property, and shall form a part of the preliminary proofs of loss required by said *American Central Insurance Company of St. Louis, Mo.*, under its policy No. 693,130, and also part of the proof of loss required by the policies of the said several other companies.

"The property upon which said sound value and loss and damage is to be appraised is, to wit: $1,000 on her two-story brick, metal-roof building, occupied on first floor for store purposes, and on second floor as dwelling by assured, situated on lot (10) of block (11), Original Plat, city of Iron Mountain, Mich.; $5,000 total concurrent insurance, including this, permitted. Attached to and forming part of the policy No. 693,130, *American Central Ins. Co.* McEnaney & Miller, Agents.

"It is understood and agreed that said appraisers shall take

Montgomery vs. American Central Ins. Co.

into consideration the age, condition, and location of said property, and all other matters affecting the cash value thereof at the time of said fire; and that they may adjourn their meetings from time to time, and to such place or places as they may agree upon, to the end that they may arrive at a just and impartial award herein. Each party to pay its own appraiser and one half of the expenses of such third person. It is understood and agreed that this agreement for an appraisal, and the appraisal and award herein, shall not be construed under any circumstances as an admission of the validity of the said policies of said insurance companies on the property named, nor of the liability of said companies thereunder, nor as a waiver of any of the conditions of said policies of said companies.

"Dated and signed at Milwaukee this 7th day of February, 1898.

"[Signatures of *American Central Insurance Company* and the three other companies, by J. C. Ragsdale, adjuster, and of Mollie Montgomery.]"

The appraisers so agreed upon took the requisite oath March 17, 1898. On the same day the two appraisers so appointed by an instrument in writing "selected William H. Sweet as umpire." Thereupon such appraisers and umpire made their award in writing as to the brick building, as follows:

*"Award and Return of Appraisers.*

"To the *American Central Insurance Company of St. Louis* and the several other companies in interest:

"Having carefully and conscientiously examined, estimated, and appraised the sound value of, and the loss and damage by fire of the 11th day of January, 1898, to, the property belonging to Mrs. Mollie Montgomery agreeably to the foregoing appointment and declaration, we hereby report that, we have, according to the best of our knowledge, skill, and judgment, estimated, appraised, and determined the sound

value to be $3,000, and the whole loss and damage to be
$2,037.18, more particularly itemized in the schedule attached
hereto, and marked 'A.'

"Dated and signed at Iron Mountain, this 19th day of
March, 1898.                "Thomas E. Pugh,      [Seal.]
                            "Robert Meyer,        [Seal.]
                            "W. H. Sweet,         [Seal.]"

· The blank appraisal agreement as to the frame building
was substantially the same as the other, and agreed upon
the same appraisers. Such appraisers took the requisite oath
March 17, 1898, and by an instrument in writing "selected
William H. Sweet as umpire" on the same day. Thereupon
such appraisers and umpire made their award in writing as
to the frame building, as follows:

## "Award and Return of Appraisers.

" To the *American Central Insurance Company of St.
Louis* and the several other companies in interest:

"Having carefully and conscientiously examined, estimated,
and appraised the sound value of, and the loss and damage
by fire of the 11th day of January, 1898, to, the property
belonging to Mrs. Mollie Montgomery agreeably to the fore-
going appointment and declaration, we hereby report that
we have, according to the best of our knowledge, skill, and
judgment, estimated, appraised, and determined the sound
value to be $1,567.41, and the whole loss and damage to be
$1,175.56, more particularly itemized in the schedule attached
hereto, and marked 'A.'

"Dated and signed at Iron Mountain this 19th day of
March, 1898.                "Thomas E. Pugh,      [Seal.]
                            "Robert Meyer,        [Seal.]
                            "W. H. Sweet,         [Seal.]"

The plaintiff's testatrix refused to abide by such awards,
or either of them, and in July, August, and September, 1898,
an action to recover for such loss and damage was com-

menced by Mollie Montgomery upon each of such policies against the company issuing the same. Such company in each case answered the complaint therein, and, among other things, pleaded such award as conclusively determining the loss and damage to the respective buildings. Such six actions were consolidated pursuant to the statutes (secs. 2609a and 2792, Stats. 1898).

On November 4, 1898, the *American Central Insurance Company of St. Louis* and the Northern Assurance Company of London, in the action against it on the policy issued by it on the frame building, each served notice on the attorneys for the plaintiff's testatrix, and thereby offered to allow judgment to be taken against it for its proportionate share of such award, to wit, " for $302.75, with costs."

On November 4, 1898, the *American Central Insurance Company of St. Louis* and the other three companies having issued policies on the brick building each served notice on the attorneys for the plaintiff's testatrix, and thereby offered to allow judgment to be taken against it for its proportionate share of such award, to wit, " for $420, with costs."

On December 12, 1898, such consolidated actions were tried, and at the close of the trial the jury returned answers to questions submitted to them to the effect (1) that the plaintiff's frame building was damaged by fire January 11, 1898, to the amount of $1,691.60; and (2) that the plaintiff's brick building was damaged by fire January 11, 1898, to the amount of $2,745.60.

On January 18, 1899, Mollie Montgomery died leaving a will, pursuant to which the plaintiff was appointed executor thereof, and thereupon he was substituted as plaintiff in this action.

On February 27, 1898, the court ordered judgment to be entered in favor of the plaintiff for the several amounts for which the several defendants offered to allow judgments to be taken against them, respectively, November 4, 1898, but

not including the costs therein offered, and also less all costs of the respective defendants since the time of such offer. From the judgment entered against the defendant the *American Central Insurance Company of St. Louis* for $722.75 in pursuance of such order, the plaintiff brings this appeal.

This case was before us and fully argued upon the merits last April, but was not decided because we were compelled to dismiss the appeal. 106 Wis. 543. It has now been reargued upon the merits. As there was no material disputed question of fact except as to the amount of damage to the respective buildings by reason of the fire, the trial court, in its discretion, submitted that question to the jury, with direction to return a verdict subject to the opinion of the court. Sec. 2857, Stats. 1898. The important question of law thus reserved was whether the respective awards as to the amount of such damage were "binding and conclusive" upon the parties, or merely *prima facie* and hence open for reinvestigation and determination by the jury. Such appraisers found and determined such loss and damage to the frame building to be $1,175.56, whereas the jury found the same to be $1,691.60. Such appraisers found and determined such loss and damage to the brick building to be $2,037.18, whereas the jury found the same to be $2,745.60. It is conceded that if the award as to the amount of the damage is binding and conclusive then the amount of damages adjudged is correct; but that if it is not binding and conclusive then the amount should be readjusted according to the verdict. As indicated, the clause of the policy quoted provided for the selection of two appraisers and an umpire to make an award of such loss on the respective buildings which should be "*prima facie* evidence of the amount of such loss."

1. It is contended that the defendant represented the appraisal agreements to be such as were provided for in the clause of the policy quoted, and that both parties so

construed and acted upon them; and hence that such con-
struction and action was binding upon them.   But there is
nothing in the policy to prevent the parties from making
the appraisal agreements which they did make; that is to
say, agreements that the award under oath of any two of
such appraisers should "be *binding and conclusive* as to the
sound value of, and loss and damage to, such property, and
shall form a part of the preliminary proofs of loss" required
by the policies.   We find no evidence of any such represen-
tation or construction as contended for by the plaintiff.   The
writings speak for themselves.   The correspondence between
the parties indicates that such writings were understood by
both parties.   There is no evidence tending to impeach
either of the awards, or the agreement upon which either
award is based, for fraud or mistake.   In the absence of
fraud or mistake Mollie Montgomery was conclusively pre-
sumed to know the contents of the appraisal agreements,
and must be deemed to have entered into such agreements
understandingly.   *Fuller v. Madison Mut. Ins. Co.* 36 Wis.
603; *Herbst v. Lowe,* 65 Wis. 321; *German Bank v. Muth,*
96 Wis. 344.

2. It is contended that the award is void because it is con-
trary to the policy of the law of Michigan as evinced by the
standard policy of that state.   The chapter of the Michigan
statute cited by counsel provided for the appointment of
commissioners, whose duty it should be "to adopt a stand-
ard form of fire insurance policy for use" in that state, and
indicated therein the general results to be accomplished by
such policy, and prohibited insurance companies from using
any other form, and provided that "every policy or con-
tract made or issued contrary to the provisions of *this act*
shall be void."   1 How. Ann. Stats. ch. 137, secs. 4344, 4345,
4349.   A somewhat similar enactment in this state was held
void as an attempt to delegate legislative power.   *Dowling
v. Lancashire Ins. Co.* 92 Wis. 63.   We find nothing in the

act nor the supplement to the act in relation to appraisal
agreements. 3 How. Ann. Stats. (Supp.), ch. 137. Besides,
the prohibition in the act relates to some different contract
or policy of insurance. 1 How. Ann. Stats. ch. 137, sec.
4349. It has no reference to the adjustment of losses under
a policy of insurance. It is very obvious that whenever a
loss occurs by fire and a liability for the loss attaches under
the policy, the entire relation beween the parties is changed
from that of insurer and insured to that of debtor and cred-
itor. 2 Wood, Ins. § 361; *Dogge v. N. W. Nat. Ins. Co.* 49
Wis. 501; *Alkan v. N. H. Ins. Co.* 53 Wis. 136; *Seyk v. Mill-
ers' Nat. Ins. Co.* 74 Wis. 70; *Hall v. Norwalk F. Ins. Co.*
57 Conn. 105. It is enough to say on this question that there
is nothing in the policy in the case at bar to preclude the
parties from settling between themselves or arbitrating the
amount of such loss or damage. In the case last cited it is
said in the opinion of the court, in effect, that the capacity
of the parties to contract after the loss could not be re-
stricted by the policy. To the same effect, *Renier v. Dwell-
ing House Ins. Co.* 74 Wis. 89, 98.

3. Counsel contend that Mollie Montgomery, being a mar-
ried woman at the time, had, under the laws of Michigan,
no power or capacity to make the appraisal agreements
mentioned. Counsel will hardly claim that she did not have
capacity to contract for the insurance. The statutes of that
state expressly authorized married women to acquire and
hold property, and to sell, transfer, mortgage, convey, de-
vise, and bequeath the same, or make contracts in relation
thereto, "in the same manner and with the like effect as if
she were unmarried;" and suits may be brought by and
against her, in relation to her property, the same as though
she were unmarried. 2 How. Ann. Stats. secs. 6295, 6297.
The moment the loss occurred by reason of the fire, she had
a claim or right of action against the company, which con-
stituted a part of her separate estate; and under the statute

cited there would seem to be no doubt but that she could make the appraisal agreements as steps towards the settlement of such controversy. *Gillespie v. Beecher*, 94 Mich. 374; *Feather v. Feather's Estate*, 116 Mich. 384, 386.

4. It is conceded that the award in question is not a statutory award, as prescribed in that state. 2 How. Ann. Stats. ch. 292, secs. 8474–8496. But it seems to be settled in Michigan, as well as in this and other states, that such statutory provisions did not preclude parties from entering into a binding agreement for submitting their controversies to arbitration as at common law, or from enforcing the award of such common-law arbitrators by an action at law. *Clement v. Comstock*, 2 Mich. 359, 361; *Bush v. Davis*, 34 Mich. 190, 196, 198; *Galloway v. Gibson*, 51 Mich. 135; *Cady v. Walker*, 62 Mich. 157. In this last case it was said by CAMPBELL, C. J., that "a parol submission to arbitration is good at common law, and is not forbidden by any statute." Page 159. This court held otherwise at an early day. *Allen v. Chase*, 3 Wis. 249. But that case was expressly overruled soon after. *Darling v. Darling*, 16 Wis. 644. In this last case it was expressly held that an award not attested as required by the statute, but otherwise unobjectionable, was good as a common-law award, and might be enforced by action, citing numerous adjudications in New York, from which our statute was borrowed, in support of the proposition.

In the case at bar the policy itself provided that, in the event of any disagreement as to the amount of the loss, the same should be ascertained by appraisers to be selected as prescribed; and that the award in writing of any two of them should "be *prima facie* evidence of the amount of such loss." As indicated in the statement of facts, after the fire the parties by agreement in writing modified such agreement in the policy so that "the award under oath of any two of such appraisers" should "be binding and conclusive as to the sound value of, and loss and damage

to, such property," and should "form a part of the preliminary proofs of loss required" by the company.   It is contended that such binding and conclusive determination is contrary to·public policy.   But, in the language of Chief Justice CAMPBELL in one of the cases cited: "All that the parties desired on the merits has been accomplished.   To hold that they should now be compelled to litigate over again before the courts what they desired to avoid litigating, would be to trifle with the substantial interests of parties, and to discourage amicable settlements, which the law ought to favor."   *Galloway v. Gibson,* 51 Mich. 135.   To encourage such methods of settlement, courts have liberally construed such awards with a view to give them effect and to accomplish the ends of justice and the intentions of parties.   *Bush v. Davis,* 34 Mich. 190; *Bancroft v. Grover,* 23 Wis. 463; *Call v. Ballard,* 65 Wis. 187, 190; *Wood v. Treleven,* 74 Wis. 577, 580.

Counsel contend that such agreement to make the award binding and conclusive was without consideration and therefore void.   But this court has frequently decided that a written·agreement may subsequently be modified by the parties, even by an oral agreement; and that such modification need not rest upon any new consideration.   *Brown v. Everhard,* 52 Wis. 205; *Kelly v. Bliss,* 54 Wis. 191; *Bingham v. Ins. Co. of N. A.* 74 Wis. 503; *Lynch v. Henry,* 75 Wis. 634; *Kingman & Co. v. Watson,* 97 Wis. 608.   This is a mere reiteration of the rule stated long ago by Lord DENMAN, C. J., when he said: "The same consideration which existed for the old agreement is imported into the new agreement which is substituted for it."   *Stead v. Dawber,* 10 Adol. & E. 57, 66.   This court has expressly held that the decision of arbitrators or appraisers chosen pursuant to an insurance policy to determine the amount of a loss is final and conclusive when so provided in the contract of insurance.   *Chandos v. Am. F. Ins. Co.* 84 Wis. 184.   A case more

similar to the case at bar has recently been decided in New Jersey, wherein it was held that, " When an appraisement of damages is offered to prove the loss by fire in an action on a policy of insurance, and is objected to on the ground that it was not made as required by the policy, the objection is rightly overruled if it appear that by an agreement made after the fire the parties superseded the appraisement clause of the policy." *Broadway Ins. Co. v. Doying*, 55 N. J. Law, 569.

Counsel further contend that such appraisal agreement ousted the courts of jurisdiction and was therefore void as against public policy, within the principles stated by Mr. Justice MARSHALL in the recent case of *Fox v. Masons' F. A. Asso.* 96 Wis. 394, 395. But it is there expressly stated in the opinion that " agreements to arbitrate special matters, such as, under an insurance policy, the amount of the loss, something that does not go to the whole groundwork of the controversy, have been universally sustained." Numerous authorities are there cited in support of that proposition, which need not be here repeated. See, also, *Hamilton v. Liverpool, L. & G. Ins. Co.* 136 U. S. 242.

We must hold that the awards were binding and conclusive.

5. Counsel for the plaintiff contend that, even if the awards were conclusive, yet the judgment is erroneous because it refused to allow costs to the plaintiff incurred up to the date of the tender of judgment by the defendant. In support of such contention counsel rely upon the wording of the statutes, which declare, in effect, that " costs shall be allowed of course to the plaintiff in an action in the circuit court . . . on contract when the plaintiff shall recover one hundred dollars or more " (subd. 6, sec. 2918, Stats. 1898); but that " costs shall be allowed of course to the defendant " in the class of actions mentioned in that section, " unless the plaintiff be entitled to costs therein " (sec. 2920). Since this

action is upon contract and the plaintiff did recover more than $100, it is obvious that the plaintiff is entitled to full costs unless the right to such full costs is taken away by some other statute. The defendant contends that, as the plaintiff failed to accept the defendant's offer, made November 4, 1898, to allow judgment to be taken against it for its proportionate share of the award, such offer must be "deemed to be withdrawn;" and that, since the plaintiff failed to recover a more favorable judgment than thus offered, he is precluded from recovering any costs by sec. 2789, Stats. 1898. The last clause of that section is that, "if the plaintiff fail to obtain a more favorable judgment he cannot recover costs, but must pay defendant's costs *from the time of the offer.*" It will be observed that, while this statute required the plaintiff to pay the defendant's costs from the time of the offer, yet it is silent as to the costs which had accrued up to the time of making the offer. It is contended that that section did not take away the plaintiff's right to costs thus given by sec. 2918, except as to such costs as accrued subsequent to the time of making the offer. But the defendant contends, and the trial court held, that it did take away such right; and it is claimed that this court has so decided. *Collins v. Lowry,* 78 Wis. 329. That action was for the unlawful and wrongful conversion of a stock certificate, which, pending the action, was surrendered and filed in court for the use and benefit of the plaintiff; and the defendant offered to allow the plaintiff to take judgment for nominal damages, with costs and disbursements, which the plaintiff declined to accept. At the close of the trial the plaintiff obtained a verdict for six cents damages by direction of the court. It is said in the opinion of the court in that case that: "To entitle the plaintiff to costs in such an action, it was necessary for him to recover at least fifty dollars damages. Subd. 5, sec. 2918, R. S. Since the plaintiff was not entitled to costs, it follows that the defendant was. Sec.

2920, R. S." *Collins v. Lowry*, 78 Wis. 333. It is true it was further said in that case, in effect, that the plaintiff therein was also precluded from recovering any costs after the offer by reason of the provisions of sec. 2789, R. S. 1878. But, as indicated, that was with reference to a case where the plaintiff was not entitled to any costs, even in the absence of such offer of judgment and the section last cited. *Parroski v. Goldberg*, 80 Wis. 343. In a later case, where the defendant offered judgment, with costs, which the plaintiffs declined to accept and then failed to recover a more favorable judgment, this court said: "We perceive no legal objection to allowing plaintiffs their costs in the circuit court accruing before such offer." *Chicago & N. W. R. Co. v. Groh*, 85 Wis. 648.

Counsel for the defendant and the trial court call attention to the difference between the provisions of sec. 2789, Stats. 1898, above quoted, and the corresponding section of the New York Code, as indicated in *Lynk v. Weaver*, 128 N. Y. 171, 175, which reads: "If the plaintiff fails to obtain a more favorable judgment, he cannot recover costs *from the time of the offer*, but must pay costs from that time." But the clause of sec. 2789 above quoted was copied literally from sec. 385 of the old Code of New York. Wait's Ann. Code, 732; Voorhies' Code, pp. 597, 598. Under that section as it then stood, it was held in New York as early as 1850 that "a defendant against whom a judgment is obtained for a less amount than he offered, in writing, to allow judgment to be taken against him under sec. 385, is entitled to costs against the plaintiff from the time of the offer." *McLees v. Avery*, 4 How. Pr. 441. In that case Mr. Justice WILLARD, in behalf of the court, said, "The plaintiff was entitled to costs up to the time when the offer was made." To the same effect is *Keese v. Wyman*, 8 How. Pr. 88. The language of sec. 2789 quoted above is found in the Code of Civil Procedure of California (sec. 997), and is there "con-

strued as applying only to costs accruing after the time of the offer," and it is held that " the plaintiff may recover costs accruing in his favor before an offer of judgment by the defendant, though he may recover a less favorable judgment than was offered." *Douthitt v. Finch*, 84 Cal. 214. See, also, 15 Ency. of Pl. & Pr. 50. We must hold that it was error to refuse costs to the plaintiff up to the time of the offer of judgment.

*By the Court.*— The judgment of the circuit court is affirmed in all things except in so far as it refused costs to the plaintiff up to the time of the offer of judgment, and to that extent it is reversed, and the cause is remanded with direction to allow such costs to the plaintiff and to modify the judgment accordingly. No costs are allowed to either party in this court, except that the defendant must pay the clerk's fees.