AUSTIN FIRE INS. CO. v. POLEMANAKOS.
(No. 24—2644.)

(Commission of Appeals of Texas, Section B. Jan. 15, 1919.)

1. INSURANCE &#9758;230 — CANCELLATION OF POLICY—TENDER OF UNEARNED PREMIUMS.

Where a fire insurance policy provided for cancellation at any time upon notice by the company, unearned premiums to be returned on surrender of the policy, a tender of such premiums was unnecessary as a prerequisite to cancellation; notice of cancellation, when properly given, canceling the policy.

2. INSURANCE &#9758;246—CANCELLATION OF POLICY BY AGREEMENT—WAIVER OF REPAYMENT OF PREMIUMS—EVIDENCE.

In an action on fire insurance policy, evidence *held* to show that the insured agreed to a cancellation of the policy and that he waived present repayment by the company of unearned premiums.

3. INSURANCE &#9758;246 — REINSTATEMENT OF POLICY—SUBMISSION TO EXAMINATION AS TO LOSS.

Where insurer gives notice to insured of cancellation of a fire insurance policy to which cancellation insured agreed, a demand by the insurer's adjuster that insured submit to examination under oath as to liability thereunder, which was complied with, did not create a new insurance contract or reinstate the old contract.

4. INSURANCE &#9758;388(1) — FORFEITURE — WAIVER.

Whenever there arises a condition under which an insurer has the right on account of any failure of the insured to comply with any condition or warranty contained in the policy, to forfeit the same, the doing of any act inconsistent with the claim of forfeiture or any recognition of the existence of the policy waives the forfeiture if insurer had knowledge of the facts authorizing it.

5. INSURANCE &#9758;246—ESTOPPEL IN PAIS—CANCELLATION OF INSURANCE POLICY.

Where a fire insurance policy was canceled by mutual agreement, a demand by the insurer's adjuster for an examination under oath as to liability thereunder, and submission thereto by insured, did not estop the company from asserting the cancellation where insured had obtained other insurance, and the expenses incurred by reason of the examination were but insignificant.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by A. D. Polemanakos against the Austin Fire Insurance Company. A judgment for defendant was reversed by the Court of Civil Appeals (160 S. W. 1134), and defendant brings error. Reversed as recommended by the Commission of Appeals.

The facts necessary to a proper understanding of our conclusions in this case are: This is a suit by the defendant in error, A. D. Polemanakos, against the Austin Fire Insurance Company to recover upon two fire insurance policies issued by said insurance company to Polemanakos on a certain building situated in Houston, Harris county, Tex. Said policies were for $1,000 and $1,500, respectively.

In addition to the insurance of $2,500 above referred to said Polemanakos had another policy for $2,500 in another company. All these policies were in force on January 18, 1910, and on that day the plaintiff in error telegraphed its Houston agent to cancel the policies held by Polemanakos. The agent called the insured on the telephone,

---

and a conversation occurred between them. As this is an important feature of the case, we will set out the version of the conversation testified to by Polemanakos:

"On Saturday before the fire, Saturday being 18th of March, 1911, I received a telephone communication from Mr. John R. Young, this gentleman that sits over here, the agent of the fire insurance company, in which he told me that the Austin Fire Insurance Company had telegraphed to him directing him to cancel and take up the two policies of the Austin Fire Insurance Company which I held on that building. That is exactly what he told me; and those two policies that he had reference to were the same two policies I am suing on here. At the time he communicated with me the fact that the Austin Fire Insurance Company demanded the surrender and cancellation of my two policies I was in my home in Houston Heights. Mr. Young, I think, was in his office down in the city of Houston at that time. In that conversation I never asked him for any premium to be given me. I never said anything to him about the policies not being canceled before I got the premium. I didn't say nothing. Mr. Young did the talking. I just sat at the other end. That was all that was necessary. In this talk with Mr. Young I asked him to get me some other policies in place of the two he was canceling, I think so, and he told me he couldn't do it. He didn't tell me that he had applied to Mr. Raphael for policies on there and couldn't get them issued. He never mentioned any names, but he did tell me that he wasn't able to get any policies on my property. Told me he wasn't able to get them. I did not ask him to apply to any other agent. I don't think I told him to apply to Mr. Dumble."

"Q. After he told you he wasn't able to procure any policies to be issued on that property for you in place of the Austin Fire Insurance Company's policies which he was canceling, did you not tell him 'All right,' that you would look after it yourself then? A. I told him 'All right,' and that was all to it. Q. That you would look to getting other insurance? A. I said 'All right.' I didn't tell him I would see to the getting of insurance in the place of the two Austin fire insurance policies. I told him 'All right,' I would see about it; that is, I would see whether I could get the insurance or not. At that time I held policies, one in the Rochester-German Insurance Company for $1,000 and in another company for $1,500 and these two policies I sue on here by the Austin Fire Insurance Company, making $2,500 more. There had been no increase in the value of my buildings that day. I had not contemplated or intended increasing my insurance above $5,000. It was my desire simply to carry $5,000 insurance on the property. That is what I usually had."

"Q. When you asked him to get you insurance, you asked Mr. Young to get you insurance to take the place of these Austin fire insurance policies that he telephoned you about canceling, did you not? A. I guess so as I didn't want to cancel the policies to get policies. That was my purpose, idea, and intention. When he told me he couldn't get any written for me, and I told him I would see about it myself, I had the same purpose and intention in mind; that was the same thing, and I didn't

have any other purpose or intention. When Mr. Young telephoned me the Austin Fire Insurance Company had directed him to cancel the two policies I didn't offer any objection to him. After I had had my talk with Mr. Young on Saturday evening I called up Mr. Dumble and asked him if he couldn't issue me some policies on this property to take the place of the ones which the Austin Fire Insurance Company canceled, and Mr. Dumble told me he didn't have any companies in his office that he could write any insurance on that building in at that time without submitting it to them, and I told him I wanted my insurance for that day, for Saturday. I think he told me something like he wouldn't be able to hear from the companies about whether they would carry the policies or not before the Tuesday following. I am not sure about that. After he told me that I rang off, and I then called up the office of Torrey & Co., insurance agents at Houston, and told them the Austin Fire Insurance Company had canceled my two policies and I wanted to know whether they could issue me $2,500 insurance to take the place of it. Q. Mr. Torrey, this gentleman sitting over here, told you he would furnish $2,500 insurance to take effect that day on that property to take the place of these Austin policies? A. Mr. Torrey never mentioned the Austin policies. Q. The ones you spoke to him about? A. I spoke to him. Q. To take the place of that? A. Yes, sir; that was Saturday. I didn't pay him any premiums at that time, and I had not at that time carried my policies in the Austin Fire Insurance Company which Mr. Young had demanded the surrender of to him. I don't know how I could carry it to him. It was nighttime. I guess it was dark."

This witness further testified that the insurance requested was written by Torrey & Co. and after the fire, which occurred the following night, was paid by the companies represented by Torrey & Co.

The premiums on the Austin Fire Insurance Company policies had been paid in advance, and up to the time of the fire the policies had not been surrendered, nor had the unearned premium been returned. After the fire the insured, Polemanakos, collected the $2,500 covered by the two policies which he had in the Rochester-German Insurance Company and the International Fire Insurance Company and the $2,500 policies written by Torrey & Co. on the day before the fire. He also gave the Austin Fire Insurance Company notice of the fire and furnished proofs of loss. The adjuster of the Austin Fire Insurance Company, after the company had received notice of the fire, wrote Polemanakos the following letter:

"R. W. Mayo, Adjuster of Fire Losses, 358 Wilson Building.

"Phones: Main 5945.
    "Haskel 851.
      "Houston, Texas, March 25, 1911.

"Mr. A. D. Polemanakos, Houston, Texas— Dear Sir: The Austin Fire Insurance Company received through its agents at Houston, Texas,

March 20, 1911, a notice of a fire which occurred on the same date, destroying or damaging building known as No. 519 Texas avenue. This notice further states that you hold policy No. 517 for $1,000.00 and policy No. 518 for $1,-500.00 on this property. The Austin Fire Insurance Company does not know whether or not you are claiming liability against the company on account of these policies, but it assumes that you have given this notice in compliance with line No. 74 of such policies, if you hold them. In the event you are claiming any liability on the part of the Austin Fire Insurance Company on account of these policies, you are advised that the Austin Fire Insurance Company requests of you an examination, under oath, in reference thereto. You are advised that I shall be glad to hold this examination at the office of Messrs. Young & Felker, Houston, Texas, at 4:00 p. m., March 25, 1911, unless some more convenient time and place will better suit you. Upon being advised in this regard, I shall be glad to conform to your wishes.

"You are requested to have and produce at said examination all policies of insurance covering this property, or any part thereof, and any and all evidence that you may have bearing on the value and ownership of said property. The examination referred to is provided for in the policies which you claim to hold, more especially lines 87 to 91, inclusive. You are advised that the Austin Fire Insurance Company in requesting this examination, and in conducting same, does not thereby waive any of the rights that it may have under the above-mentioned policies, nor any of the terms or conditions of said policies, nor does it thereby admit a liability on account of said policies, nor a forfeiture of said policies, if such exists, nor does it intend thereby so to do. Please advise me, at the earliest possible moment, if the time and place mentioned herein will suit your convenience.

"You can reach me at the office of Messrs. Young & Felker. Yours truly, [Signed] R. W. Mayo, Adjuster for Austin Fire Ins. Co."

Polemanakos, as requested in the letter, appeared at the place agreed upon by the parties and submitted to an oral examination.

The insurance company refused to pay the loss upon the ground that the policy had been canceled prior to the fire and this suit was brought by Polemanakos to recover on the two policies. The district court, upon conclusion of the testimony, gave the jury a peremptory charge to find a verdict for the defendant except as to the unearned premium which it had tendered. Upon the verdict thus rendered the court entered judgment for the insurance company except as to the amount tendered. Polemanakos appealed, and the Court of Civil Appeals (160 S. W. 1134) reversed the judgment and remanded the cause for a new trial. Writ of error in this case was granted upon application of the insurance company. There is no question raised on the pleadings, and such other facts as are necessary will be stated in connection with the opinion.

Wm. Thompson, of Dallas, John S. Patterson, of Austin, and Will C. Thompson, of Dallas, for plaintiff in error.

L. B. Moody, of Houston, for defendant in error.

MONTGOMERY, P. J. (after stating the facts as above). The policies of fire insurance involved in this controversy are on what is known as the New York standard form, and each of them contains this provision:

"This policy shall be canceled at any time at the request of the insured, or by the company by giving notice of cancellation. If this policy shall be canceled, as hereinbefore provided, or become void, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy."

In this case it is contended that the policy was not canceled by the notice of cancellation, because at the time the notice was given the unearned portion of the premium was not tendered or paid to the insured.

There are many cases, some decided by the courts in this state, holding that without actual tender of the money the notice of cancellation is of no effect. There are many other cases holding that the tender is not necessary, and that the company is under obligation to return the money only upon surrender of the policy by the insured. The authorities on both sides of this mooted question are collected in the notes in L. R. A. See 13 L. R. A. (N. S.) 884, and L. R. A. 1916F, 444.

The cases in Texas which decide this question are Hartford Fire Insurance Co. v. Cameron, 18 Tex. Civ. App. 237, 45 S. W. 158, decided by the Court of Civil Appeals for the Second District, Niagara Fire Insurance Co. v. Mitchell, 164 S. W. 919, decided by the Court of Civil Appeals for the Fourth District, and Assurance Co. v. Manufacturing Co., 92 Tex. 297, 49 S. W. 222. These Texas cases all hold that in order to effect a cancellation it is necessary that the unearned premium should be returned at the time the notice is given, or at least that the notice is not effective until the unearned premium is tendered or paid. The last case cited above contains the only expression upon the subject by our Supreme Court that we have been able to find. In that case there is no analysis of the provision nor any discussion thereof. There is in the opinion a statement to the effect that the policy involved in that case was not canceled because no tender of the unearned premium was made before the fire.

There is nothing in the opinion to disclose the circumstances under which the notice was given nor whether the insured demanded a return of the premium.

[1] Without discussing this question, we think that under the plain provisions of the

contract no tender was necessary as a prerequisite to the cancellation of the policy, and that the notice, when properly given, had the effect to cancel the policy, and that the obligation of returning the unearned premium was to be performed only upon the return of the policy by the insured.

This question has been discussed so often by the courts of the various states that we feel sure we would not be able to say anything new on the subject.

In the case of Mangrum v. Insurance Co. decided by the Supreme Court of California in 1916, 172 Cal. 497, 157 Pac. 239, L. R. A. 1916F, 440, Ann. Cas. 1917B, 907, will be found an exhaustive discussion of this provision of the policy. The cases on both sides of the question are reviewed, and we think that the conclusion reached in that case that no tender of the premium is necessary to the cancellation of the policy is sound. We have said this much because in granting the writ of error in this case Justice Hawkins indicated that he was of opinion that no tender or repayment of the premium was necessary to effect a cancellation of the policy.

[2] If we are mistaken in the above views, or if they do not meet the approval of the Supreme Court, we further think that, even if under the terms of the policy it is held that a tender or repayment of the unearned premium was necessary, it would not control this case. The facts, we think, show that the insured, Polemanakos, consented and agreed to the cancellation of the policy and waived the present repayment of the unearned premium. The facts are fully set out above, and, without restating them, we think they show that the policies were canceled by agreement. No other reasonable construction, we think, can be given to the words and acts of the insured. The case of Bingham v. Insurance Co., 74 Wis. 498, 43 N. W. 494, and numerous cases cited therein, we think, support our conclusion.

Having arrived at the above conclusion, the only other question involved is: Did the act of the adjuster in requesting Polemanakos to submit to examination, and his response to the request, have the effect of reviving the policy and making the insurance company liable thereon?

The view we take of this matter is that the provisions of the policy that "the insured, as often as required, shall exhibit to any person designated by this company all that remains from any property herein described and submit to examinations under oath by any person named by this company and subscribe the same," and the further provision "that this company shall not be held to waive any provision or condition of the policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for," have no applica-

tion to this case. If, as we have found, the policy was canceled by agreement, there remained no subsisting contract of insurance between the parties. The only right either party had was that of Polemanakos, growing out of the contract of cancellation, to have the unearned premium returned.

After the fire Polemanakos disregarded what we have found to be his agreement to cancel the policy, gave notice of the fire, and in effect demanded that the insurance company should pay the loss. He at that time had no subsisting contract with the insurance company, and therefore had no right to make such claim or demand. Upon receipt of this claim the adjuster of the insurance company wrote the letter set out in the statement above, and Polemanakos, in response to said letter, submitted to an examination.

[3, 4] We do not think that this demand of the adjuster under the circumstances of this case, and the compliance therewith by the insured, had the effect of making a new contract or reinstating the contract of insurance. We do not care to go into the question of the effect of an insurance company claiming a right under a policy upon any subsequent claim or contention by it that the policy has been forfeited, further than to say: That whenever there arises a condition or state of facts under which the insurance company has the right, on account of any failure of the insured to comply with any condition or warranty contained in the policy, to forfeit the same, that the doing of any act inconsistent with the claim of forfeiture, or any recognition of the fact that the policy is still in existence, will ordinarily waive such forfeiture, provided the insurance company has knowledge of the facts authorizing the forfeiture. This principle is so well established that no authorities are necessary.

This principle, however, is not, in our opinion, applicable to this case. The case here is not one where a waiver of forfeiture is claimed. The insurance company does not claim that the policy had terminated by reason of any breach on the part of the insured of any condition or warranty contained therein. It was claimed that the policy had been canceled by mutual agreement.

If, as we have found, this claim was well founded, then, as against the insurance company, the insured had no right under the contract, and could recover on it only by pleading and proving such a state of facts as would amount to an estoppel on the part of the insurance company to deny the existence of the contract.

[5] We do not think the facts plead or proved are sufficient to estop the insurance company from insisting that the policy had been canceled. If before the fire the insurance company had by any act recognized

the policy as being in force, and relying thereon the insured had failed to obtain other insurance, or otherwise acted to his disadvantage on the assumption that the policy was still in force, the insurance company would have been estopped. But we do not think the act of the adjuster in this case, and the fact that the insured submitted to an examination, is sufficient to estop the company.

"In order to create an estoppel in pais, the party pleading it must have been misled ·to his injury; that is, he must have suffered a loss of a substantial character, or have been induced to alter his position for the worse in some material respect." 16 Cyc. 744; Waxahachie National Bank v. Bielharz, 94 Tex. 493, 62 S. W. 743.

In this case Polemanakos knew that the policy had been canceled, and he in fact had obtained other insurance before the fire to take its place. After the fire the demand for an examination was preceded by a demand on his part for the payment of the loss occasioned by the fire. The trouble and expense incurred by him in response to the request of the adjuster was not a loss of a substantial character, but was insignificant.

Our conclusion is that the Court of Civil Appeals erred in reversing and remanding this cause for a new trial, and we think that the judgment of the Court of Civil Appeals' should be reversed, and the judgment of the trial court affirmed.

SADLER, J. (concurring). The holding in Assurance Co. v. Manufacturing Co., 92 Tex. 297, 49 S. W. 222, mentioned in the foregoing opinion, is differentiated from the holding in the instant case by the facts. In the Assurance Case, supra, an examination of the original pleadings and statement of facts contained in the record discloses that in that case the minds of the insurance company and of the assured did not meet with reference to the question. of cancellation of the policy. The insurance company, through its agent, notified the assured of its purpose to cancel the policy, and inclosed a cancellation receipt to be signed and returned when the cancellation would be completed by the credit and return of unearned premium. The assured did not accept the cancellation; did not sign the receipt. In the instant case the insurance agent notified the assured of the cancellation of the policy, and, acting upon the notification of cancellation, the assured sought to and did obtain insurance, manifesting a clear acceptance of the act of cancellation on the part of the company and a waiver of the tender of the unearned premium as a condition precedent to cancellation.

It is therefore apparent that the holding in the Assurance Case is not of controlling effect under the condition of the present record.

The writer is further of the opinion that those cases in which it is held that a written request for examination amounts to a waiver are not applicable to the case made here. In the present case the cancellation was completed and the policy of none effect before the loss. The subsequent request for examination of the assured on the part of the company arose by reason of the assertion of claim by the assured under the contract of insurance; he still having possession of the policy. It is therefore believed that the correct conclusion to be drawn from the facts is that the request for examination arose by reason of the act of the assured, and that it did not amount to a reinstatement of the policy. In those cases where it has been held that the demand for examination was a waiver, it will be seen that the waiver is of a right to declare invalid the policy by reason of the breach by the assured of some condition contained in the contract, and not where the right of forfeiture had already been exercised and the policy declared void by reason of the breach. In the present case the policy had already, by reason of the act of the insurance company, concurred in and accepted by the assured, been rendered nugatory. The request for the examination, therefore, is believed not to amount to a waiver of the cancellation and a reinstatement of the policy, since it came in response to an assertion of claim by the assured.

I concur in the conclusion reached in the opinion in this case and in the reasoning submitting these additional views which I hold.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes