HARTFORD FIRE INS. CO. et al. v. BONNER MERCANTILE CO.

(Circuit Court of Appeals, Ninth Circuit.   May 18, 1893.)

No. 72.

1. ARBITRATION AND AWARD—SUBMISSION—CONSTRUCTION—UMPIRE.
    The agreement between insurer and insured to submit to arbitration the amount of damage suffered by fire provided that each party should appoint an arbitrator, by whom the loss should be "estimated and appraised in detail, together with a third person to be selected by them, who shall act as an umpire to decide between them in matters of difference only; and the said three persons, or any two of them, shall a true return and award make," etc.   *Held*, that such third person was constituted an umpire, and not a third arbitrator to act with the other two in making the estimates; and this though his decision is not, under the terms of the instrument, to be binding, unless concurred in by one of them.   44 Fed. Rep. 151, affirmed.

2. SAME—PROCEDURE OF UMPIRE.
    On a bill by the insurer to set aside the award it was shown that the two arbitrators examined each item of stock of goods in question, and each stated his estimate of the damage suffered by it, without discussion, or endeavor to reconcile conflicting estimates; that the umpire was present, and examined some few articles, but refused to decide any differences appealed to him at the time, stating that he would settle them when appraisement was ended; that one arbitrator fixed the damage at $5,000, the other at over $115,000; that the umpire then took their inventories, having made few memoranda himself, locked himself in a room with several clerks, and after three days made an award of $60,000, which one of the arbitrators concurred in.   *Held* that, in view of the fact that the submission constituted him an umpire, his mode of making his award was not such as to invalidate it, and no ground is shown for setting it aside.

3. SAME—EXCESSIVE AWARD.
    The court cannot consider the objection that the award was excessive, in the absence of a showing of corruption or partiality on the part of the arbitrators, or of fraud in the opposite party.

4. SAME—UNDUE INFLUENCE.
    The fact that the umpire and the arbitrator appointed by the insured partook of the hospitality of the insured while the umpire was making up his award cannot be urged, in argument on appeal, as a ground for invalidating the award, where it was not so set forth in the bill, and complainants did not amend so as to avail themselves of it after the fact was brought out in evidence.

5. SAME—PARTIES—JURISDICTIONAL AMOUNT.
    All the insurers of the property damaged joined in the submission, and afterwards joined in the bill to set aside the award.   As the proportional liability of some of them, under the award, was less than $2,000, the court dismissed the bill as to them.   *Held*, that this was error, for the controversy was single, the amount in controversy being the amount of the award.

Appeal from the Circuit Court of the United States for the District of Montana.

In Equity. This was a suit by the Hartford Fire Insurance Company and others against the Bonner Mercantile Company to set aside an award of arbitrators. A demurrer to the bill was overruled, and an injunction granted. 44 Fed. Rep. 151. Subsequently the court dismissed the bill as to some of the complainants, for want of jurisdiction, and, as to the rest of them, found the issues for defendant, and dismissed the bill on the merits. Reversed.

T. C. Van Ness, H. G. McIntire, and L. A. Redman, for appellants. M. Kirkpatrick and Forbis & Forbis, for appellee.

Before GILBERT, Circuit Judge, and HAWLEY and HANFORD, District Judges.

GILBERT, Circuit Judge. The Hartford Fire Insurance Company united with a number of other insurance companies in bringing a bill to set aside an award of arbitrators which was made in pursuance of an agreement between the insurance companies and the Bonner Mercantile Company, to determine the amount of loss incurred by the latter on account of a certain fire. The property injured by the fire consisted of a large stock of general merchandise, of the value of more than $200,000. The damage was partly from the fire, and the water used to extinguish the same, but was chiefly claimed to consist in injury from smoke.

Under an agreement of arbitration, the terms of which are referred to hereafter, two arbitrators were selected by the respective parties,—G. E. Rockwood, by the mercantile company, and Joseph P. Treaner, by the insurance companies. These two made selection of H. Schurmeier, of St. Paul, to act as the third party mentioned in the agreement. Pending the arrival of Schurmeier, Treaner and Rockwood began the inspection of the stock. Treaner found the smoke damage to be practically nothing, while Rockwood began by estimating such damage at 8 or 10 per cent., but a day or two later, as the examination proceeded, placed his estimate of such damage at an average of about 50 per cent. on the cost of the goods. The evidence would indicate that there was little or no discussion between these two appraisers concerning the estimates thus given. Treaner's testimony is that he frequently, and from the first, called upon his associate to specify wherein the damage claimed by him consisted, and that he often called Rockwood's attention to the fact that the goods claimed by him to be injured were in fact wholly uninjured, but that Rockwood refused to discuss the points of difference, and answered all arguments by saying, "We will leave it to the third man." Rockwood, on the other hand, admits that there was no discussion, but attributes that fact to the insulting language and demeanor of Treaner towards him, which he says rendered amicable discussion between them impossible. The two appraisers continued in this manner going over the stock and causing their widely divergent estimates to be entered in books of inventory, until the arrival of Schurmeier.

When Schurmeier arrived, his attention was called to what had been done, and the failure of the two appraisers to agree. He

thereupon went over with Treaner the goods that had been examined up to date, and then proceeded with both Rockwood and Treaner to examine the remainder of the stock. During the whole of the examination, Schurmeier persistently refused to discuss the matters in controversy, or to express an opinion upon the damage to any item of the goods, or upon the opposing claims of the other two, although often called upon by both to decide the points upon which they differed. He allowed them to proceed to the end in the manner in which they had begun. The goods were overhauled. Clerks wrote in books, in separate columns, the cost price, the quantity, the damage estimated by Treaner, and the damage estimated by Rockwood. During the examination, Schurmeier generally stood by, and saw the goods. At times, he examined them closely. At other times, he was paying little or no attention. Occasionally, he made some memoranda of his own in a small notebook. The examination was concluded late upon a Saturday night. Upon the following Monday morning, Schurmeier took the books containing the entries of the appraisers to his room at an hotel, and requested that the two appraisers remain within convenient call, and that he have a clerk to assist him, stating that he intended to get through, and leave for St. Paul, that afternoon. Later in the day he sent for one more clerk, and still later for four more. With these six clerks he remained in his rooms, with locked doors, until Wednesday afternoon. He then called in the appraisers, and read to them his award. The estimate of the total loss, as found by Treaner, was $5,000. The estimate of Rockwood was, in the aggregate, over $115,000. The total award found by Schurmeier was $60,624.73. As soon as the award of Schurmeier was declared by him, the insurance companies, through their representatives, made protest against his method of arriving at his award, and his refusal to discuss the items of the loss with the other arbitrators, and made demand that such discussion and consideration of the elements of the damage be had. Schurmeier made no reponse to the protest or the demand. Rockwood agreed to accept the award of Schurmeier as conclusive, and the same was signed by Schurmeier and Rockwood as the award of arbitration.

The allegations of the bill, upon which it is sought to set aside the award, and which are claimed by the appellants to be sustained by the evidence, are, in substance, the following:

(1) That the award was excessive, and that the actual loss did not exceed $5,000.

(2) That Rockwood, in placing his estimate upon the damage, did not act upon his own judgment, or upon any investigation made by him, but acted under the direction of the defendant, with the intent that the defendant should receive a larger award than was justly due.

(3) That Schurmeier did not act with Rockwood or Treaner, or with either of them, in appraising the loss, or in deciding any of the matters submitted to arbitration, but that Schurmeier, having obtained the result of the estimation and determination of the others, separated himself from the said arbitrators, and

by himself, without the advice, counsel, or assistance of said arbitrators, or either of them, proceeded to determine arbitrarily, and without examination of the property, the loss to the same, and arbitrarily and unjustly did determine said loss to be $60,-624.73.

(4) That Rockwood, at the instigation of the defendant, united with said Schurmeier in rendering an award, but that in fact they did not examine into the loss, and did not consider the condition of the property at the time of the fire, and did not make proper deduction for depreciation of property saved.

The determination of the validity of the award must depend upon whether Schurmeier was an umpire to decide points of difference between the arbitrators, or was a third arbitrator to act with the others in arriving at a determination of the loss. If his relation was that of arbitrator, the irregularity of his proceeding was clearly such as to invalidate the award. He refused to discuss the evidence, or to act with the other arbitrators. He separated himself from the others, to make his award, in the seclusion of his room, without access to the damaged goods, and without other data than the estimates of Rockwood and Treaner, and the cost price of the goods. He evidently arrived at his results by dividing the difference between the two arbitrators. There is evidence that he occasionally consulted some meager memoranda of his own, written upon a sheet of paper, or upon a pocket note-book. But when the vast number of the items of the stock is considered, and the impossibility of retaining in the memory, unaided by memoranda, a recollection of the extent of the injury to each parcel of the goods, it is impossible to arrive at any conclusion other than that Schurmeier arbitrarily adopted an estimate that practically lay midway between the estimates made by Rockwood and Treaner.

The agreement under which the loss was submitted to arbitration provided that the amount thereof should be "estimated, determined, and appraised in detail by G. E. Rockwood and Joseph P. Treaner, together with a third person, to be mutually selected and appointed by them, who should act as umpire to decide between them in matters of difference only, and that the said three persons, or any two of them, should a true return and award make, under oath, of the sound value and loss and damage," etc., "and that the persons so selected as aforesaid should arrive at the actual cash value as sound, and the amount in money of loss or damage actually caused by the fire." The terms of this agreement are ambiguous. While the third man is therein referred to as an "umpire," the use of that term is not necessarily decisive of his relation to the arbitration. The whole of the agreement must be considered, to determine what was the intention of the parties. There is in the agreement, first, a general expression of the fact that the goods are to be examined in detail by the two arbitrators named, together with a third, who shall be chosen by them. These words, unaffected by the remainder of the agreement, would clearly indicate that all three were to be

arbitrators, and to act as such. But the words which immediately follow particularly designate the duties of the third man, and confer upon him a specific function aside from that of arbiter. He shall "act as umpire, and decide between the others in matters of difference only." These words contain a specific definition of the duties of the third man, and they control the general terms elsewhere found in the agreement. The whole instrument amounts to a stipulation that the method in which the third man shall examine the goods in detail together with the others, and an award make, is by acting as umpire between the other two. The further provision that two of the three must agree upon an award does not affect the duties of the umpire, or deprive him of his character as such. The parties to the agreement, in making that provision, have only given expression to their caution by stipulating that the award of the umpire shall not be conclusive of their respective rights unless it shall be such as to meet the approval of at least one of the arbitrators. Viewed in the light of his duties as umpire, there is nothing proven in the evidence which would invalidate the award made by Schurmeier. There is no doubt that the umpire decided the points of difference between the arbitrators, and, having done so, and his award having met the approval of one of the arbitrators, his judgment is conclusive, however erroneous the court may be inclined to consider it. Morse, Arb. 164, 197, 293, 316, 320; Water Power Co. v. Gray, 6 Metc. (Mass.) 131; Pulliam v. Pensoneau, 33 Ill. 375.

The objection urged by the appellants, that the award is excessive, is one that is unnecessary for us to consider. Much testimony was taken upon the issue thus raised, but the settled doctrine of the decisions precludes an investigation of the question of the measure of damages, unless there was corruption or partiality of the arbitrators, or misconduct during the course of the hearing, or fraud in the opposite party. It is not necessary that the award conform to what would have been the judgment of the court. It is sufficient that it was arrived at in pursuance of the terms of the agreement voluntarily adopted by the parties. Underhill v. Van Cortlandt, 2 Johns. Ch. 350.

It is claimed that the defendant was guilty of misconduct which should invalidate the award. Such misconduct is said to consist in the fact that, during the time Schurmeier was making up his award, he and Rockwood were invited to the house of Mr. Connell, the vice president and manager of the Bonner Mercantile Company, and, in response thereto, accepted his hospitality. The extent of the entertainment furnished to the invited guests on this occasion does not appear. It is impossible for the court to say how far the social influence thus exerted may have affected the award. Without discussing the question whether this misconduct was sufficient to impeach the award, it is sufficient, so far as this case is concerned, to point to the fact that the complainants, in drawing their bill, did not set forth these facts as ground for setting aside the award, and, after the conclusion of the evidence, did not see fit to ask leave to amend, so as to avail themselves thereof.

On the trial in the circuit court the bill was dismissed, as to certain of the complainants, on the ground that since their respective proportionate liability for the amount of the total loss, as fixed by the award, was less than $2,000, their contention with the defendant does not present a controversy within the jurisdiction of the court. All of the policies were issued for an amount in excess of $2,000, but each contained a provision limiting the liability thereunder, in case of loss, to such proportion of the entire loss as the amount of the policy bears to the whole amount of insurance upon the property. The question arises, what is the amount in controversy in this suit? Is it the whole sum of the award, or are there several distinct amounts involved, namely, the various proportions of the loss which will fall upon the several insurance companies under their respective policies? To determine this question it is necessary to consider the origin of the award, and the purpose of the present suit. All of the insurance companies, upon the one part, joined with the insured, upon the other part, in an agreement for arbitration to determine the gross amount of the loss. Under the agreement, evidence was heard upon the one issue thus presented, and upon no other. The amount was determined, and the decision of the arbiters bound all the parties. So far as the amount of the loss is concerned, no further controversy was permissible. The award arose out of the common agreement of all of the insurers. The object of this suit is to set it aside upon allegations and evidence common to all the parties assailing the same. This suit does not determine the ultimate liability of the insurance companies. The subject in controversy, therefore, is the validity of the award,—shall the award stand, or shall it be set aside,—and the amount in controversy must be held to be the amount of the award, which is the subject of the suit. If the final decree in the case were a final determination of the matter, establishing and enforcing the ultimate liability of each insurer, there would be good reason for holding that the amount of that ultimate liability so apportioned to each is the amount in controversy. But such is not the case. This suit is not conclusive or determinative of the liability of the insurance companies to pay any fixed sum under their respective policies. No execution can be issued upon the decree that is to be entered herein. The payment of the award cannot be enforced in this suit. To accomplish that result, other actions must be brought, and other judgments obtained. With those actions, and the amounts that shall be in controversy when they shall be brought, this court has nothing to do. It has been repeatedly held by the supreme court, in cases where the jurisdiction of the court is made to depend upon the amount in controversy, that the question is determined by the amount involved in the particular case, and not by the contingent loss either of the parties may sustain by the probative effect of the judgment, or by its collateral effect in another suit. Grant v. McKee, 1 Pet. 248; Security Co. v. Gay, 145 U. S. 123, 130, 12 Sup. Ct. Rep. 815; Washington & G. R. Co. v. District of Columbia, 13 Sup. Ct. Rep. 64.

So far as concerns the dismissal from the suit of certain of the

complainants, the decree appealed from is modified, and said parties are reinstated as complainants in this suit.. In all other respects the decree is affirmed, with costs to the appellee.