[S. F. No. 5779. In Bank.—June 26, 1912.]

## ELLEN DORE et al., Respondents, v. SOUTHERN PACIFIC COMPANY, Appellant.

[S. F. No. 5780. In Bank.—June 26, 1912.]

## CLARA E. FOLGER, Respondent, v. SOUTHERN PACIFIC COMPANY, Appellant.

VENDOR AND VENDEE—ARBITRATION TO DETERMINE VALUE OF LAND—STATUTORY ARBITRATION NOT PROVIDED FOR.—A provision in a contract for the sale of land, whereby the parties agreed that the value of the land should be determined by a majority of a board of arbitration thereby appointed, whose award should be conclusive and binding on them, and which obligated the vendee to pay as the purchase price of the land the amount so determined by the arbitrators as its value, and the vendors to convey the land upon the receipt of such purchase price, does not provide for a statutory arbitration, under the provisions of title X, part III of the Code of Civil Procedure. (Secs. 1281–1290.)

ID.—MATTERS SUBJECT TO ARBITRATION UNDER STATUTE—CONTROVERSY THE SUBJECT OF CIVIL ACTION.—The only matter that can be submitted to arbitration, under section 1281 of that code, is a "con-

troversy which might be the subject of a civil action" between the parties concerned. A question merely as to the value of the land is not such a controversy.

ID.—COMMON LAW AGREEMENT FOR ARBITRATION—MATTERS ARBITRABLE —CONCLUSIVENESS OF DECISION.—Such an agreement is valid as a common law agreement for arbitration. Under that law it is competent for persons to submit to arbitration any question or matter of difference between them, such as the value of property, whether it could be the subject of an action or not, and when they have done so, the decision, in the absence of fraud and if regularly made, will be binding and conclusive upon them.

ID.—KINDS OF SUBMISSION TO DETERMINE VALUES—NOTICE OF HEARING AND OPPORTUNITY TO OFFER EVIDENCE.—Submissions to determine values are of two kinds, first, where the valuers are to examine the property and fix the value in accordance with their own opinion or judgment, in which case notice of the hearings of the valuers is not required, and, second, where they are to afford the parties a hearing, and an opportunity to offer evidence, and are to adjudge the value upon a consideration of the evidence, as well as their own opinion.

ID.—CONSTRUCTION OF AGREEMENT IN QUESTION.—The agreement in question was of the second class above mentioned, as it expressly provided that the arbitrators should fix a day to begin the taking of testimony and hear the respective parties.

ID.—STIPULATION THAT AGREEMENT SHALL BE CONSIDERED AS STATUTORY ARBITRATION AND ENTERED AS ORDER OF COURT.—Notwithstanding the question of value submitted by such agreement did not come within the terms of the statute, the agreement and the award based thereon were not invalidated by reason of the inclusion in the agreement of a stipulation that it should be held and taken to be a submission within the meaning of section 1283 of the Code of Civil Procedure, and might be entered as an order of the superior court.

ID.—STIPULATION EFFECTIVE ONLY AS PART OF AGREEMENT.—If the statutory regulations apply at all to such an agreement it is not because of their force as statutes, but solely because of the agreement of the parties making them a part of the agreement.

ID.—EFFECT OF STIPULATION—PROCEEDINGS TO BE CONDUCTED IN STATUTORY MODE.—Such an agreement could not give the clerk power to enter judgment, as provided in section 1286 of that code, or give the court jurisdiction of such a matter, as of an arbitration proceeding. At most, it could only give the parties the right to have the proceedings before the arbitrators and by them conducted in the statutory mode. As the parties are presumed to know the law, it will be presumed, in the absence of any allegation of mistake, that this was the extent of their purpose in declaring that the submission might "be entered as an order of the superior court."

ID.—WAIVER OF STIPULATION—ENTRY AS ORDER OF COURT—EVIDENCE OF WAIVER.—Such a stipulation, as it derived all its force from the agreement of the parties and none from the statute as such, could be waived, and it was waived so far as it required an entry as an order of court, when neither of the parties at any time caused the submission to be entered as an order of court, but each of them, well knowing that it had not been so entered, consented to and proceeded with the arbitration, introduced evidence before the arbitrators and proceeded to an award without objection on that score.

ID.—WAIVER OF STIPULATION AS TO SWEARING ARBITRATORS AND DELIVERY OF AWARD.—Conceding that such stipulation was an agreement that the arbitrators should be sworn and that the award, signed by them, should be delivered, in accordance with sections 1285 and 1286 of the Code of Civil Procedure, such requirements could be waived.

ID.—SUFFICIENCY OF EVIDENCE SHOWING WAIVER—FAILURE TO OBJECT—PROMISE TO PAY AWARD.—A waiver by the defendant of such requirements was sufficiently shown by evidence to the effect that many days were occupied in the hearings before the arbitrators and that the defendant appeared and presented evidence and conducted the proceeding on its part without ever demanding or suggesting that the arbitrators be sworn, or objecting because they had not been sworn; that pending the proceeding, it entered into agreements for a deduction from the amount awarded for a certain parcel of the land, and for an extension of the time in which the award might be made; that when the award was made, an unsigned copy was delivered to it, and it was then informed that the arbitrators had not been sworn, but no objection was then or ever made by it on either ground; and that thereafter it treated the award as valid on various occasions when payment was sought by the plaintiffs, and promised to pay the amount allowed.

ID.—ACTION TO ENFORCE CONTRACT—RECITAL OF VENDOR'S TITLE.—In an action by the vendors to enforce such agreement, a recital therein that one of the vendors is the owner of the land which she agreed to convey is an admission by the vendee, and sufficient *prima facie* evidence of title to such land.

ID.—EVIDENCE OF VENDORS' TITLE—JUDGMENTS ESTABLISHING TITLE UNDER MCENERNEY ACT—JUDGMENTS BECOMING FINAL BEFORE DECISION.—In such action, where no attempt was made by the vendee affirmatively to show any defect in the vendors' title, a finding that the latter were the owners of the land at the time the contract was made, and thereafter until the time of the trial, is sufficiently supported by such recital, and evidence of judgments in certain suits instituted by them under the so-called McEnerney Act of 1906 (Stats. Ex. Sess. 1906, p. 78) determining them to be the owners in fee of such properties, which judgments, although they had not become final at the time of their admission in evidence, were entered

after the action was begun and before the commencement of the trial thereof, and did become final before the decision was made therein.

Id.—Judgments Competent Evidence of Title During Continuance of Trial.—In the absence of any showing to the contrary, it will be presumed that no appeal was taken from such judgments, and that they were competent evidence of· title during the continuance of the trial, which, in legal contemplation, continued until the decision of the court below was made.

Id.—Lands in San Francisco—Contract for Sale After Destruction of Records by Fire—Objection of Want of Record Title not Tenable.—Where such contract affected lands in the city and county of San Francisco, and was entered into after the destruction of the public records thereof by the fire of April, 1906, the parties must be presumed to have contracted with reference to the existing condition which was known to them, and an objection that the vendors, at the time performance was due under the agreement and at the time tender was made by them, did not have a title of record, is without any force.

Id.—Title not Destroyed by Destruction of Record.—The destruction of the record of title to real estate does not destroy vested titles thereto, or deprive persons of the title or ownership thereof.

Id.—Positive Agreement to Buy Land—Destruction of Record Title —Actual Title in Vendor—Vendee not Relieved from Obligation.—Where time is not of the essence of a contract to sell land, and the contract is a positive agreement to buy and not a mere option depending on the sufficiency of the showing of title, the mere destruction of the record of title does not relieve the vendee of the obligation to purchase; it is enough if the vendor is in fact the owner in fee, unencumbered, at the time of performance or at the time of the decree directing performance.

Id.—Arbitration to Fix Value of Land—Contract not Complete Until Award—Enforcement of Contract.—An agreement to buy land at a price to be fixed by arbitration is not complete until the award is made, and it may then be enforced in the same manner as if the parties had agreed upon the price and inserted it in the agreement themselves.

Id.—Specific Performance of Contract by Vendor—Award as Evidence of Value—Adequacy of Consideration—Fairness of Contract.—In an action by the vendors to specifically enforce such contract, the award of the arbitrators fixing the value of the land was competent evidence of value, and, in the absence of evidence impeaching it, or showing such value to be too high, was sufficient to support a finding that the value so fixed was the reasonable value of the property, so as to render the consideration to the vendee adequate, and the agreement as to it just and reasonable.

ID.—CONCLUSIVE EVIDENCE OF VENDORS' TITLE—ADMISSION OF OTHER IMPROPER EVIDENCE WITHOUT PREJUDICE.—In such action, in the absence of any showing by the vendee to impeach the title of the vendors, the fact that they had title is conclusively established by evidence that the vendee had caused their title to be examined and had found it sufficient, and that judgments had been rendered in their favor under the so-called McEnerney Act of 1906, determining the title to be in them. Under such circumstances, any error in admitting in evidence abstracts of title in proof of the vendors' title was without prejudice to the vendee.

ID.—APPEAL—ERRORS NOT DISCUSSED IN BRIEF.—Alleged errors in the admission of evidence, which are referred to but not discussed in the appellant's brief, deserves scant notice on appeal.

ID.—EVIDENCE—AGENCY OF PERSONS ACTING FOR VENDEE.—The evidence is held to amply establish the facts that the persons who entered into the contract in question on behalf of the vendee were its authorized agents, and that it held them out to the world as its agents authorized to act in such matter.

APPEALS from judgments of the Superior Court of the City and County of San Francisco and from orders refusing new trials. F. J. Murasky, Judge.

The facts are stated in the opinion of the court.

J. E. Foulds, William F. Herrin, and Peter F. Dunne, for Appellant.

Charles S. Wheeler, J. W. Dorsey, and J. F. Bowie, for Respondents Ellen Dore et al.

Stratton & Kaufman, for Respondent Clara E. Folger.

SHAW, J.—In each of these actions, the defendant has appealed from the judgment and from an order denying defendant's motion for a new trial. The cases depend mainly upon the same facts. They were tried together upon stipulation that the evidence taken should be considered in both cases so far as applicable.

The plaintiffs, respectively, sue to enforce an agreement for the sale of real estate, made by all of the plaintiffs, as vendors, and by the defendant as vendee. The agreement and the circumstances under which it was made are peculiar. Two actions for the condemnation of said lands and other lands for

railroad purposes were, and still are, pending in the superior court of the city and county of San Francisco. The Southern Pacific Railroad Company was the plaintiff in each of said actions, and the plaintiffs above named, together with other persons, were the defendants therein, except that the plaintiff, Sharp, was a party to only one of the actions. The Southern Pacific Railroad Company, it must be noted, is not the same company as the Southern Pacific Company, the defendant appealing herein. The Southern Pacific Company, however, owns a majority of the capital stock of the Southern Pacific Railroad Company and it controls the latter company. The condemnation suits were carried on by the Southern Pacific Railroad Company at the direction and for the benefit of the Southern Pacific Company. The agreement aforesaid was made on December 17, 1906, and is as follows: It was first recited that Ellen Dore, Charlotte E. Dore Horrigan, Maurice Dore, and William B. Sharp, who are the plaintiffs in the first case above entitled, owned, or claim to own, interests in certain tracts of land, described, and that Clara E. Folger owned a certain other tract in fee, and an interest in one of the tracts in which the first named parties also had interests. It appointed Frank S. Johnson, William Hale, and William Thomas as a board of arbitration and empowered them to ascertain and determine the value of each separate tract of said land and of each separate interest therein belonging to said parties. The judgment of a majority of said board was to be conclusive. It further provided that when the awards should be made, the Southern Pacific Company would, within sixty days thereafter, pay to the other parties, respectively, the sums so awarded to said parties and that the said parties immediately thereupon would each, respectively, convey said parcels of land to said Southern Pacific Company by good and sufficient deeds. It was further provided, with respect to the lands owned or claimed by the plaintiffs in the Dore case, that the sums fixed as the price thereof by the board of arbitration should be paid into the superior court in one of the condemnation suits above mentioned, being the case No. 1675, in the superior court, entitled Southern Pacific Railroad Company *v.* Griffith J. Kinsey et al., and that such payment into court should discharge said Southern Pacific Company from liability to said parties. Before the award was made a supplementary agreement was

made by the defendant and the plaintiffs in the Dore case, reciting that the said plaintiffs did not own the reversionary interest in one of the tracts, and providing that five per cent of the value fixed for said tract by the arbitrators should be deducted and the remainder taken as the value thereof, for the purposes of the contract of sale. The board of arbitration made an award, fixing the value of the respective parcels of land in question. The respective parties, plaintiffs herein, thereupon tendered to said defendant good and sufficient deeds, duly executed, conveying the several parcels of land in question and demanded payment of said sums so awarded and agreed on as the price thereof, but the defendant refused and still refuses to pay the same.

These facts are alleged and the court found that they are true. Judgment was given in each case in favor of the respective plaintiffs enforcing the agreement of sale. As grounds for the reversal of the judgment and orders, the defendant contends that certain of the facts are contrary to the evidence, and that the court below erred in certain rulings at the trial.

The agreement did not provide for a statutory arbitration, under the provisions of title X, part III of the Code of Civil Procedure. (Secs. 1281–1290.) The matters which fall within the scope of these provisions are those described in section 1281. It reads as follows:—

"Persons capable of contracting may submit to arbitration any controversy which might be the subject of a civil action between them, except a question of title to real property in fee or for life. This qualification does not include questions relating merely to the partition or boundaries of real property."

This section does not authorize the submission of any matter to arbitration except a "controversy which might be the subject of a civil action" between the parties concerned. The only thing submitted was the question of the value of the land. There might be a controversy over such value, of course, but that controversy could not be the subject of an action, and the value when fixed, either by an award, so called, or by an agreement, would, of itself, impose no obligation on either party, or determine anything that could be enforced as a judgment, or entered on the judgment book as such, as provided in sections

1283 and 1286.   An action will not lie for the mere purpose of fixing the value of property.

At common law it is competent for persons to submit any question or matter of difference between them to the decision of third persons, whether it could be the subject of an action or not, and when they have done so, the decision will be binding upon them. (5 Am. & Eng. Ency. of Law & Prac. 33.) "To furnish a sufficient basis for entering into a submission, no legal cause of action in favor of either party need exist. That there is a dispute, controversy, or honest difference of opinion between them concerning any subject in which they are both interested is enough.   Nor indeed is it necessary that they should have come to the actual point of a dispute; for a matter simply in doubt may be submitted." (Morse on Arbitration, p. 36.)   Where the thing to be done is merely ministerial, as the casting up of an account, the measurement of timber, or the estimate of the quantity of work done under a contract, the decisions are somewhat at variance on the question whether such a submission is properly an arbitration in which the award, in the absence of fraud, will be conclusive on the parties, or a mere computation for the information of the parties.   (Ibid.)   Submissions to determine values are of two kinds—first, where the valuers are to examine the property and fix the value in accordance with their own opinion or judgment; second, where they are to afford the parties a hearing, and an opportunity to offer evidence, and are to adjudge the value upon a consideration of the evidence, as well as their own opinion.   In cases of the first class, it is usually held that the agreement is not properly a submission to arbitration and is not subject to the rules which govern arbitrators, and that notice of the meetings of the valuers is not required.   *Church* v. *Seitz,* 74 Cal. 287, [15 Pac. 839], was a case of this class and it may be considered as establishing this doctrine in this state.   (See, also, *Stockton etc. Works* v. *Glen Falls Ins. Co.,* 98 Cal. 570, [33 Pac. 633]; *Foster* v. *Carr,* 135 Cal. 86, [67 Pac. 43].)

The agreement for submission in the case at bar was of the second class above mentioned.   It expressly provides that the arbitrators should fix a day to begin the taking of testimony and hear the respective parties.   Cases of this class are usually held to be common law arbitrations, and subject to the

common law rules on the subject. The distinction is not important, for notice was duly given, the parties appeared and days were spent in the investigation. The above cases hold that, in the absence of fraud, the decision of persons appointed as mere appraisers or valuers, although not properly or technically an arbitration and award, is binding on the parties. It cannot be disputed that where an award as to values is to be made after a hearing and upon a judicial investigation and consideration of evidence, as in the case at bar, such award, if regularly made, is final and conclusive upon the parties with respect to the matter submitted. (Morse on Arbitration, 487.)

The defendant claims that if the thing submitted does not come within the terms of the statute, then there was no agreement at all and that the entire proceeding was unauthorized and the award void. This proposition is founded on the following stipulation in the agreement:

"This agreement shall be held and taken to be a submission within the meaning of section 1283 of the Code of Civil Procedure of the state of California, and may be entered as an order of the superior court of the state of California in and for the city and county of San Francisco."

The argument is that this stipulation shows that both parties intended that the controversy should be submitted under the statute, that the statute gives the right to have the award vacated for gross error, and to have it modified or corrected for miscalculation or imperfection, by a motion made in the proceeding, which remedies are not available against a common law award, and that as it cannot be taken as a statutory submission, it cannot be said that the parties did agree, or ever would have agreed, to a common law submission, that there was no meeting of minds in a valid agreement for any arbitration, and that to hold the agreement good as a common law arbitration, would require the court to make a new contract for the parties.

There are a number of cases which hold that where the parties agree to a statutory submission and follow it up by proceeding, or attempting to proceed, in the statutory mode, but because of fatal defects in the procedure the award is invalid, the reasons above stated will prevent it from enforcement by action as an award at common law. (*Williams* v. *Walton,*

9 Cal. 142; *Hepburn* v. *Jones,* 4 Colo. 98; *Estep* v. *Larsh,* 16 Ind. 82; *Francis* v. *Ames,* 14 Ind. 251; *Sargent* v. *Hampden,* 32 Me. 78; *Deerfield* v. *Arms,* 37 Mass. 483 [32 Am. Dec. 228]; *Holdbridge* v. *Stowell,* 39 Minn. 360, [40 N. W. 259]; *Benjamin* v. *Benjamin,* 5 Watts & S. (Pa.) 562.) In *Williams* v. *Walton* the proceedings were in all respects regular and within the scope of the statute, but the submission and award were declared void because the jurisdiction of the county court, to which it was made, did not extend to awards. The statute giving that court such jurisdiction was itself invalid, being contrary to the constitution. In all these cases the matter submitted was one which was subject to arbitration under the terms of the statute. There are other cases to the effect that where upon a submission, avowedly under the statute, the award, or the judgment thereon, is void as a statutory award or judgment, because of a fatal defect in the proceedings, the award will nevertheless be good as a common law award, and may be enforced by an ordinary action. (*Galloway* v. *Gibson,* 51 Mich. 135, [16 N. W. 310]; *Gibson* v. *Burrows,* 41 Mich. 713, [3 N. W. 200]; *Burnside* v. *Whitney,* 21 N. Y. 148; *Darling* v. *Darling,* 16 Wis. 644.) We do not find it necessary to attempt to reconcile these cases, or to follow strictly the doctrine of either class. The matter to be submitted in this case, as we have seen, was not arbitrable under the statute, but was arbitrable at common law. If the statutory regulations apply at all, it is not because of their force as statutes, but solely because of the agreement of the parties, which, it may be said, makes the statutory provisions a part of the agreement. Such agreement could not give the clerk power to enter judgment, as provided in section 1286, or give the court jurisdiction of such a matter, as of an arbitration proceeding. At most, it could only give the parties the right to have the proceedings before the arbitrators and by them conducted in the statutory mode. As the parties are presumed to know the law, and it is not alleged that they were mistaken concerning it, we may presume that this was the extent of their purpose in declaring that the submission "may be entered as an order of the superior court."

As this stipulation derives all its force from the agreement of the parties and none from the statute as such, it follows that this part of the agreement could be waived. What the

parties may do, by executory agreement, they may undo, or disregard, or waive by mutual consent duly carried into execution. The court below found that, notwithstanding the said stipulation, neither of the parties at any time caused the submission to be entered as an order of court, but that each of them, well knowing that it had not been so entered, proceeded with the arbitration, introduced evidence before the arbitrators and proceeded to an award without objection on that score, that each waived any right to cause the submission to be so entered, and that the form and manner of the arbitration and of the proceedings therein, and the making of the award without such entry as an order of court, was with the knowledge and consent of each and all of the parties and was agreed to by them. These findings are not challenged by the defendant. We must accept them as true. Indeed, the evidence in the record tends strongly to support them. The facts found show that there was a complete waiver of the stipulation for the entry of the submission as an order of court and of the right to have it considered as a statutory submission, and a practical agreement to proceed in the manner actually followed.

The statute requires that before acting the arbitrators must be sworn and that the award must be signed and delivered to the parties. (Secs. 1285, 1286.) The specifications of insufficiency of the evidence point out that there was no evidence that either of these things was done. The court found that the arbitrators were not sworn and that on the day the award was signed an unsigned copy thereof was served on defendant and that defendant waived all objections on account of the failure of the arbitrators to be sworn and the lack of a better service of the award.

What we have said heretofore is a sufficient answer to the point that the failure of the arbitrators to be sworn, and the failure to serve a signed copy of the award, makes it invalid as a statutory award. It is not a statutory award, and we need not decide whether or not these defects would avoid such an award. We may concede, for the purposes of the case, that the stipulation above quoted was, in effect, an agreement that the arbitrators should be sworn and that the award should be delivered. As before stated, these requirements, if agreed to, could be waived. We think the finding that they were

waived is supported by the evidence. The original agreement
was made on December 17, 1906. The evidence does not show
how soon thereafter the hearings before the arbitrators were
begun, but it appears that many days were occupied in the
hearings and that defendant appeared and presented evidence
and conducted the proceeding on its part without ever de-
manding or suggesting that the arbitrators be sworn, or ob-
jecting because they had not been sworn. The agreement for
a five per cent deduction from the amount awarded for a
certain parcel was made on March 11, 1907. On April 30,
1907, the failure to make the award within the ninety days
fixed in the original agreement was waived and the time was
extended to May 15, 1907. The award was made on May 10,
1907, and on the same day the unsigned copy was delivered
to defendant and it was informed that the arbitrators had not
been sworn. No objection was then or ever made on either
ground. Negotiations to obtain payment before the expira-
tion of the sixty days by allowing a discount, and for an ap-
proval of the title, were begun at once. Defendant agreed to
make such payment if the title was good. Defendant's at-
torneys examined the evidences of title offered by plaintiffs
and approved the same, except that there was an outstanding
tax-sale and that one Kearney owned an equitable interest
in a part of the Dore lands. The clause providing that the
value awarded to the Dore lands should be paid into court in
the condemnation suit was inserted in the original agreement
to enable the defendant to secure the Kearney interest by a
judgment in condemnation, if necessary, using said money to
pay him. In order to obtain payment without delay, it was
agreed by defendant and plaintiffs that the Dores should pro-
cure title to the Kearney interest. In pursuance of this agree-
ment they obtained a deed from Kearney to the defendant
for his interest and paid him $11,500 on account. They also
redeemed the land from the tax-sale. The defendant ex-
amined the award and pointed out an error in the calculations
of the area of some of the parcels. On this account it was
agreed that $5,371.86 should be deducted from the values of
the Dore lands, as awarded. The defendant's attorneys then
approved the title and the defendant promised to pay the
values as thus fixed. The plaintiff on July 9, 1907, appeared
at defendant's offices, tendered to the defendant duly executed

deeds, including that of Kearney, conveying the lands to defendant, and asked payment. It was late in the afternoon, too late to conclude the transaction on that day, and for that cause defendant asked plaintiffs to call again the next morning, at which time defendant promised to pay the money and take the deeds. Plaintiffs called the next morning with the deeds and were informed that the price was considered too high and that defendant would not pay the price or take the land. No other objection was made. It is clear from all these proceedings that all objections to the arbitration proceedings and to the award were waived.

The finding that defendant, after the award was made and with full knowledge that the arbitrators were not sworn, treated the award as valid and promised to pay the amount allowed, is challenged. There was some conflict in the evidence on this point, but, as the facts already recited show, there was sufficient evidence to sustain it.

The other findings attacked are: 1. The finding that the respective plaintiffs were the owners of the property at the time the deeds were tendered and payment demanded; 2 The finding that the value of the property was fairly and properly determined by the arbitrators and that the value so fixed was the reasonable value of the property.

The facts already stated in the discussion of the subject of waiver shows that the evidences of title exhibited by plaintiffs were satisfactory to the defendant and that the refusal to pay was on other grounds. The agreement itself recites that the plaintiff Folger is the owner of the land which she agreed to convey. This is an admission by the defendant and is sufficient *prima facie* evidence of title to those lands. In addition to this the plaintiffs introduced in evidence judgments in certain suits by the respective plaintiffs against "All Persons," etc., under the so-called McEnerney Act of 1906 (Stats. Ex. Sess. 1906, p. 78), adjudging and determining that the respective plaintiffs were the owners in fee of the said properties. These judgments were entered in 1909, after the present action was begun and before the trial. The said judgments would have become final, by expiration of time for appeal, before the findings were signed, and, as no showing was made to the contrary, we must presume that there was no appeal and that they were competent evidence of title during

the continuance of the trial, which, in legal contemplation, continued until the decision of the court below was made. There was no attempt whatever, by the defendant, on the trial, to show affirmatively any defect in plaintiffs' title. From all these facts and circumstances the court could reasonably infer that the plaintiffs were the owners of the land at the time the contract was made and thereafter until the time of trial. We think the evidence was sufficient to sustain the finding as to title. The ruling admitting in evidence the aforesaid judgments before they became final seems to be in accord with *Cook* v. *Rice,* 91 Cal. 668, [27 Pac. 1081], and contrary to *Naftzger* v. *Gregg,* 99 Cal. 88, [37 Am. St. Rep. 23, 33 Pac. 757]. The error, if any, was harmless, since they became final before the trial was closed. (*Harris* v. *Barnhart,* 97 Cal. 552, [32 Pac. 589].)

The objection that the evidence shows that at the time performance was due under the agreement and at the time tender was made by the plaintiffs, they did not have title of record to the lands, is without any force. It is based on the fact that this tender occurred after the great fire of April, 1906, in which practically all of the records of titles in San Francisco were burned. Upon this the defendant asserts that there was no *record* title in existence. The destruction by the fire mentioned occurred before the agreement was made. The parties must be presumed to have contracted with reference to the existing condition. It was well known to them at the time of the contract. Moreover, it cannot be said that the destruction of the record of title to real estate destroys vested titles thereto, or deprives persons of the title or ownership thereof. The title and the record of title are two distinct things. Under such circumstances, where, as here, time is not of the essence of the contract, and it is a positive agreement to buy and not a mere option depending on the sufficiency of the showing of title, it is enough if the vendor is in fact the owner in fee, unencumbered, at the time of performance or at the time of the decree. (*Alvarez* v. *Brannan,* 7 Cal. 509, [68 Am. Dec. 274]; *Allstead* v. *Nicol,* 123 Cal. 597, [56 Pac. 452]; 36 Cyc. 719; 4 Pomeroy's Equity Jurisprudence, sec. 1408; 26 Am. & Eng. Ency. of Law, p. 114.) The doctrine of *Crim* v. *Umbsen,* 155 Cal. 697, [132 Am. St. Rep. 127, 103 Pac. 178], is not applicable to such a case. That the plaintiffs were then

the owners in fee was substantially admitted at the time by the defendant, and it was not seriously controverted at the trial.

It is a well established rule of equity that in an action to enforce specific performance of an executory agreement for the sale of land, the plaintiff must allege and prove that the consideration received by the other party was adequate and that the agreement is, as to him, just and reasonable; in other words, that it is not, as to the other party, an unconscionable, inequitable, or hard bargain, that the value of the land and the price to be paid are in reasonable approximation to equality. (Civ. Code, sec. 3391; *White* v. *Sage,* 149 Cal. 615, [87 Pac. 193]; *Kaiser* v. *Barron,* 153 Cal. 790, [96 Pac. 806]; *Stiles* v. *Cain,* 134 Cal. 171, [66 Pac. 231]; *Bruck* v. *Tucker,* 42 Cal. 353. There are many other cases.) If the other party, with knowledge of such inequality as there may be, nevertheless desired to and freely did enter into the contract without any unfair advantage being taken of him, it will not be deemed inequitable as to him. The demands of this rule will be considered as sufficiently met by these circumstances. (2 Pomeroy's Equity Jurisprudence, sec. 926; 6 Ibid., sec. 790.) An agreement to buy land at a price to be fixed by arbitration is not complete until the award has been made. It may then be enforced in the same manner as if the parties had agreed upon the price and inserted it in the agreement themselves. The defendant contends that where the price is fixed by arbitration the equitable rule above stated applies to the same extent as where the parties agree on the price, and that the vendor must prove that the price is reasonably adequate and just. For the purposes of this case this may be conceded. In the present case, the award was introduced in evidence. It was, in effect, decided, in the cases heretofore cited, that an award as to value whether technically a common law arbitration or a mere appraisal, is nevertheless binding on the parties, and, in the absence of fraud or mistake, conclusive. (*Church* v. *Seitz,* 74 Cal. 289, [15 Pac. 839].) On principle, it would appear to be at least competent evidence of value. It was the judgment of the arbitrators duly given upon a consideration of the evidence and arguments offered by both parties bearing upon the question to be decided by them. They were selected by both parties to make the decision and

were the authorized agents of both to declare it. It is a declaration by agents as to a matter within the scope of their authority and made in the performance of their delegated duty. Such declarations, on familiar principles, are evidence against the principals. The agreement in this case declares that "the judgment of a majority of said board of arbitrators shall be conclusive as to such values." The following authorities are to the effect that such an award is conclusive as to the value of the property: *Collier* v. *Mason*, 25 Beav. (Eng.) 204; *Smith* v. *Boston etc. Co.*, 36 N. H. 490; *Underhill* v. *Van Cortland*, 2 Johns. Ch. 361; *Van Cortland* v. *Underhill*, 17 John. 408; *Hartford Fire I. Co.* v. *Bonner M. Co.*, 56 Fed. 382, [5 C. C. A. 524]; *Baltimore etc. Co.* v. *Canton Co.*, 70 Md. 408, [17 Atl. 394]; *Atkinson* v. *Whitney*, 67 Miss. 662, [7 South. 644]; *Montgomery* v. *American I. Co.*, 108 Wis. 158, [84 N. W. 175]; *Chandos* v. *American Fire Ins. Co.*, 84 Wis. 184, [19 L. R. A. 321, 54 N. W. 390]; *Boston Water Power Co.* v. *Gray*, 47 Mass. (6 Met.) 173; *Brigham* v. *Evans*, 113 Mass. 538. Some of these cases were actions to set aside an award. The defendant claims that such cases are not in point. It is unnecessary to discuss the question for many of the other cases were actions to enforce an award, or a contract in which the award was an essential term, and several of them were actions in equity to compel specific performance of agreements for the sale of land, in no way distinguishable from the case at bar. The defendant cites the case of *Parken* v. *Whitby*, Turn. & Russ. 367, 37 Eng. Rep. 1142, to the point that a court of equity is not bound by such an award of value. It was there decided that, notwithstanding such award, the court could require other evidence of value in order to satisfy its conscience if there were circumstances raising a suspicion that the valuation was unfair. In support of this statement the court cited *Emery* v. *Wase*, 5 Ves. Jr. 846; *Emery* v. *Wase*, 8 Ves. Jr. 517, s. c. on appeal; and *Hall* v. *Warren*, 9 Ves. Jr. 605. *Emery* v. *Wase* was a suit for specific performance similar to the case at bar. The court, both at the trial and on appeal, declared that the award of value was conclusive in the action unless it was shown that it was procured by fraud or was made under gross mistake and that the burden to show these matters was upon the party who sought to impeach the award. *Hall* v. *Warren* strongly intimates that the

award is conclusive unless it is impeached for fraud. It was also a suit for specific performance. Upon the authority of these cases we hold that the award was evidence of value and was sufficient to support the finding. There was no evidence offered by the defendant to impeach the award in any particular, or to show that the value fixed thereon was too high, and the only error disclosed was corrected by agreement of the parties before the award became due. It is perhaps inaccurate to say that the error was shown. The evidence was that, during the negotiations for settlement at a discount, the defendant asserted that there was an error in the computation of the area and that the plaintiffs thereupon agreed to the deduction mentioned. They did not admit that there was in fact such an error, but they acceded to the defendant's claim in regard to it, and it is allowed in the complaint.

In the defendant's brief some objections are made to the proceedings of the arbitrators and to the accuracy of the facts recited in the award. No evidence was introduced to show that the facts therein stated were untrue, and with the single exception already referred to, which was corrected by agreement of the parties after the award was made, there was no evidence to show any inaccuracy or defect whatever in the award. This answers the objections. We cannot take notice of facts which rest upon the mere assertion of counsel in the briefs.

It is claimed that the court erred in admitting in evidence four volumes of so-called abstracts of title from the plant of the California Title Insurance and Trust Company, a corporation, which, ever since the year 1886, has been engaged in the business of preparing and issuing abstracts of title to lands in San Francisco. These volumes comprised an abstract of title as shown by the public records, to the lands in question belonging to the Dores. They were prepared and made up prior to the great fire of April, 1906. Objection was made to them on the grounds that they had not been "issued and certified to as correct" by the company which made them in the manner provided by section 1855a of the Code of Civil Procedure. They purported to show the contents of the public records affecting said lands prior to the destruction of said records by the great fire in San Francisco in April, 1906. We do not deem it necessary to decide whether they were

admissible or not.   The evidence shows that when the arbitration was concluded the defendant authorized and directed its attorneys to examine the title of the plaintiffs to these lands and determine as to its sufficiency, and that said attorneys did make such examination and determined for the defendant that the title offered was satisfactory.   Section 11 of the so-called McEnerney Act of 1906 provides that a judgment procured under that act establishing the title of the petitioner thereunder is ''binding and conclusive upon every person who, at the time of the commencement of the action had or claimed any estate, right, title or interest in or to said property, or any part thereof, and upon every person claiming under him by title subsequent to the commencement of the action.'' (Stats. 1906, p. 81.)   The aforesaid judgment under that act establishing the respective titles of the plaintiffs in the lands in controversy were made in suits begun in May, 1909, and July, 1909, respectively, and they are conclusive.   It is not claimed that any change occurred in the condition of the titles between the ninth day of July, 1907, when the deeds were tendered, and the time of the beginning of these McEnerney suits, nor after they were begun and up to the time of the decision of the court in the case at bar.   The defendant offered no evidence to impeach the plaintiff's title.   It does not now point out any defect therein.   It is apparent, therefore, that the evidence, without the aid of these abstracts, was conclusive of the fact that the title is in the plaintiffs, and that the ruling admitting the abstracts could not have prejudiced the defendant.   The finding on that point must of necessity have been against defendant, even if they had been excluded. It is proper to add that section 1855a has been amended. (Stats. Ex. Sess. 1911, p. 64), so that the precise question is not likely to again arise in the trial court.

Twelve pages of appellant's brief are occupied in enumerating some twenty-eight alleged errors in the admission of evidence.   None of them affects the substantial merits of the case.   Many of them are covered by what we have already said in this opinion.   We do not deem it necessary to discuss them.   Indeed, with one exception, appellant does not discuss them, but merely states the objection.   Such discussion deserves scant notice.   (*Duncan* v. *Ramish,* 142 Cal. 690, [76 Pac. 661]; *People* v. *Glaze,* 139 Cal. 163, [72 Pac. 965].)

There was objection to testimony as to the negotiations between the defendant and the plaintiffs concerning the title, the proposed discount and the agreement, on the ground that the persons who represented defendant in these negotiations had no authority from defendant to act in that behalf. Defendant has put itself in the position of employing persons to act as its agents, and its only agents, to carry on its business and then denying that these persons have any authority to act in every instance in which such action does not redound to its advantage. It does not deny the execution of the agreement in question, nor that the officers and agents in question were the persons to whom this business was intrusted. The agreement was made by the persons whose authority it now disputes. The objection appears to be that the plaintiffs did not offer some resolution of the board of directors specifically authorizing every detail of the business. There was ample proof that defendant held out these persons to the world as its agents authorized to do this business. It is unnecessary to state it. The objection was well overruled. We find no prejudicial error in the record.

The judgments and orders are affirmed.

Sloss, J., Lorigan, J., Angellotti, J., Melvin, J., and Henshaw, J., concurred.

Rehearing denied.